RUEPING, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*November 18—December 13, 1904.*

*Railroads: Negligence: Personal injuries: Res adjudicata: Damages.*

1. A decision of the supreme court as to the *quantum* of damages recoverable on a given state of facts is *res adjudicata*, where there is no material difference between the evidence in the second trial and that on the first, as to the loss plaintiff has suffered, or will suffer, resulting from his injury.

2. Plaintiff, forty-five years of age, whose business was mainly office work, suffered a compound fracture of the tibia about two and one-half inches below the knee, accompanied by a simple fracture of the fibula. He was skilfully treated, and progressed, without any unusual complications, to a substantial recovery in the time usual in such cases. He was prevented from attending to his ordinary business about six months, and suffered such pain as is ordinarily incident to such fractures. On recovery the ligaments of the knee joint were impaired so that they were more than normally mobile, and troubled him some in moving about. *Held*, that a verdict for more than $5,000 damages was excessive.

APPEAL from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action to recover for personal injuries. The claim of the plaintiff was that on June 24, 1900, while a passenger on defendant's train, through want of ordinary care on the part of its servants, he was severely injured. The only issue tried was as to the proper amount to award plaintiff as compensation. The case was first tried in December, 1901, resulting in a judgment for $12,000. On appeal that was reversed as excessive. 116 Wis. 625, 93 N. W. 843. The court held, that in order to avoid invading defendant's right to an assessment of damages by a jury the error could not be so cured as to avoid a new trial, unless plaintiff would consent to take judgment for $2,500. Plaintiff declined to do that. A new trial was accordingly had resulting in a verdict for $9,500. A motion was made to set that aside as excessive, which was overruled. Judgment was thereupon rendered in plaintiff's favor for $9,500, and costs. Defendant appealed.

*Edward M. Hyzer,* for the appellant.

*John I. Thompson,* attorney, and *Charles Barber,* of counsel, for the respondent.

MARSHALL, J. If, as counsel for appellant contends, there is no material difference between the evidence on the last trial and that on the first, as to the loss respondent has suffered, or will suffer, resulting from his injury, it would seem, as a matter of course, that the verdict cannot stand. A decision as to the *quantum* of damages recoverable on a given state of facts, for the case in hand, is *res adjudicata.* It is as absolutely controlling as a decision therein upon any other question. *Collins v. Janesville,* 111 Wis. 348, 87 N. W. 241. Hence, so far as the amount recoverable on the facts here was formerly determined, that is the test of the correctness of the present verdict. On such former occasion, with the language "A jury might reasonably assess plaintiff's damages as low as $2,500, and might, of course, assess the same somewhat higher," it was said:

"The range of human judgment in respect to such matters is quite large. It is a very difficult matter to set boundaries beyond which it cannot go. It cannot be done at all with any very great degree of accuracy."

That permitted the jury to go to any limit to which fair-minded men might reasonably place the damages—considering, of course, that a given amount of pain and suffering are not to be measured by the sum of money one would take to be subjected thereto. *Heddles v. C. & N. W. R. Co.* 74 Wis. 239–259, 42 N. W. 237,—but did not fairly suggest that a sum nearly four times the minimum stated might be allowed. Counsel for respondent strenuously contend that the evidence is far different now than before, and that one material fact, viz.: a simple fracture of the fibula, or small bone of the leg, opposite the compound fracture of the tibia, or large bone thereof, appearing by the evidence on both trials, was not in the mind of the court when rendering the decision. True, the fracture of the fibula was not referred to, but the effect of the injury as a whole was mentioned and that was the ultimate fact for consideration in fixing the compensation. The evidence now, though in much greater volume than before, seems to be substantially to the same effect as formerly. As in *Collins v. Janesville, supra,* there was more evidence, expert and otherwise, on the last occasion than on the first, but the facts it tended to establish were, in the main, the same in one case as in the other.

Except for the omission before to refer to the fracture of the small bone of respondent's leg, no complaint is made but that the nature of his injury and the result as it then appeared are there fairly treated in these words:

"The large bone of the right leg below the knee was broken transversely downward. There was a displacement, giving the injury the character of what is called a compound fracture. It was not specially painful. Plaintiff recovered so far as probably he ever will, in a few months. He was forty-five years of age when injured. His business was

mainly office work. He was sufficiently restored to enable him to attend to such business substantially as formerly. The restored limb is not quite as strong as before. It is not wholly in its normal condition and never will be. The ligaments at the knee joint are so impaired that the joint is more than normally mobile. That permits a slipping outward as the weight of the body is thrown upon the imperfect limb. He is required, in using his limb, to use care and favor the impaired member. He has not full control of the limb, because, as indicated, the ligaments of the knee are to some extent permanently relaxed. He testified that his only difficulty in using his limb was that there was a looseness in the knee joint permitting the leg to bow out about an inch as he threw his weight upon it, and that it troubled him some in moving about."

The evidence now is to the effect that there was a compound fracture of the tibia about two and one half inches below the knee, and opposite thereof a simple fracture of the fibula. While it appeared formerly, as it does now, that respondent suffered considerable pain, it did not and does not appear that the injury, for one of the kind, was specially painful. He testified more at length on the last occasion than on the first in that regard, but did not add materially to what one would naturally infer from the character of the injury, and the length and kind of treatment required therefor. We may well say now, as before, in effect, that the injury, all things considered, was not specially painful. Respondent had prompt and efficient attention from the time of the accident till he recovered. There were no special features in his case. He commenced to mend promptly under treatment and the improvement progressed rapidly to a substantial recovery. It was said before, as indicated, that he recovered so far as he ever will in a few months. It appears the same now. The time occupied in such recovery was about six months. It was said then, as indicated, that he recovered so as to resume his ordinary business and conduct the same as formerly. He so testified most distinctly on the last occa-

sion. Again, it was said that the injured member was not
cured so as to be quite as strong as before, and never could
be. Now the evidence is to the effect that he customarily
walks by the aid of a cane from his home to his place of busi-
ness, the distance being about half a mile, and returns, several
times a day; that by such aid he can walk up and down
stairs; that he can go about his office without a cane; that he
suffers only a sense of weakness in the limb, except when
changes in the weather occur; that in walking the defective
limb bows out with a slipping sensation at the knee joint re-
quiring him to use a cane; that aside from relaxation of the
ligaments, allowing such abnormal motion, when his weight
is thrown upon the injured limb, requiring the use of a cane
to enable him to walk conveniently, and the weakness of the
limb, rendering him unable to use it as freely as before, it
now is and probably will continue to be in its normal condi-
tion, as regards the injury. There is no evidence now, nor
was there on the former trial, that his earning capacity at his
customary labor was permanently impaired by the accident.
There is some testimony that the weakness of the limb may
increase with age, but on the whole that, at the best, only ap-
pears to be a bare possibility.

A more detailed reference to the evidence in the record
would only further emphasize what has been said as to the
situation presented to the jury to be remedied by a money
equivalent, being substantially the same on the last trial as
on the first. If there is any difference, it is in respect to the
pain suffered by respondent when he was rescued from the
wreck, and during the brief period he was at the hospital.
We still think the jury might reasonably have assessed his
damages as low as $2,500, and might reasonably have named
a somewhat larger sum, but not one around four times the
minimum stated.

Recapitulating the situation briefly. Respondent was pre-
vented from attending to his ordinary business about six

months. He suffered considerable pain, but only what was ordinarily incident to a compound fracture of the tibia, accompanied by a simple fracture of the fibula. He was treated skilfully from the first and progressed without any unusual complication to a substantial recovery in the usual time in such cases. There was severe pain only at times during a few weeks, which was relieved with reasonable efficiency upon being manifested. After the expiration of six months from the injury he attended to his ordinary business as before, and for aught that appears will always be able to do so, so far as the injury in question is concerned. He will suffer some inconvenience in going about, and the range of his opportunities for employment will be somewhat limited because of the injury. It will probably cause him some pain during changes in the weather, and he will always have a sense of weakness in the imperfect limb, which will to some extent limit his capacity for going about. For that, in the whole, the jury awarded the equivalent, on a six per cent. basis, of an annuity sufficient to support respondent in idleness the balance of his life. Enough to purchase in any of the better class of insurance companies dealing in annuity policies, one yielding $50 per month for the balance of his days. A mere statement of that situation is enough in itself, it seems, to show that the verdict is clearly excessive, is far beyond mere compensation to respondent for his loss. No such amount for a similar loss has been sustained in this or any other court, so far as we can discover. We cannot escape the conclusion that the jurors, without fault of court or counsel, were either influenced by something outside the case, or failed to understand that they were expected to award respondent a mere money equivalent for his loss, so far as the judgment of fair-minded men could arrive at the matter, bearing in mind that the amount to be awarded against a railway company upon a given state of facts is no greater than against the humblest individual. The actual loss to be

paid for cannot be legitimately affected in the slightest degree by the character or capacity to pay of the defendant. A dollar will go just as far, as an equivalent for pain or loss of any kind, coming from one source as from another.

The precedents confirm what has been said. In *Karasich v. Hasbrouck,* 28 Wis. 569, plaintiff, a man of twenty years of age having two ribs broken and one leg so badly bruised and wounded that pieces of the bone worked out through the wound, was confined to his bed for a considerable length of time, suffered much pain and was permanently disabled from following his usual occupation, and rendered reasonably certain to permanently suffer pain to a considerable degree, was awarded $5,000. In *Propsom v. Leatham,* 80 Wis. 608, 50 N. W. 586, a laborer in good health and middle life, who was seriously and permanently injured, one of his legs being broken and partially permanently deformed, was awarded $1,800. In *Rhoades v. Varney,* 91 Me. 222, 39 Atl. 552, a person whose leg was broken in three places and was, after full treatment, permanently shorter than before, was awarded $1,200. In *Meiners v. St. Louis,* 130 Mo. 274, 32 S. W. 637, plaintiff, whose leg was broken and seriously and permanently impaired, was awarded $5,166. In *Beltz v. Yonkers,* 74 Hun, 73, 26 N. Y. Supp. 106, plaintiff, both of whose legs were broken was awarded $5,000. In *Brady v. Manhattan R. Co.* 6 N. Y. Supp. 533, a person whose leg was broken and who also received permanent internal injuries, was allowed $5,000. In *Missouri, K. & T. R. Co. v. Johnson* (Tex. Civ. App.) 37 S. W. 771, $5,000 was allowed. Both bones of plaintiff's leg were fractured between the knee and ankle, and the leg, after treatment, was left shorter than before, and was otherwise considerably deformed and incapacitated for use. In *North Chicago St. R. Co. v. Wiswell,* 168 Ill. 613, 48 N. E. 407, $5,000 awarded for a broken leg was said to be excessive to the amount of $2,500. In *Lombard v. C., R. I. & P. R. Co.* 47 Iowa, 494, a verdict of

$4,000 for a broken leg was reduced to $1,500. In *Black v. C. R. Co.* 10 La. Ann. 33, both of plaintiff's legs were broken and a verdict for $10,000 was reduced to $5,000. In *Slette v. G. N. R. Co.* 53 Minn. 341, 55 N. W. 137, plaintiff, a man of thirty years of age, who sustained a compound fracture of the thigh bone and was left, after treatment, with his leg permanently defective, but not so as to materially interfere with his earning capacity, received a verdict of $4,100, which included $100, paid out for treatment, and it was reversed as being far beyond the proper limits of mere compensation.

We regret the necessity to reverse the judgment in this case a second time for excessiveness of the verdict. We acquit counsel on both sides of any responsibility therefor. Moreover, the error of the court in not dealing with the excessive verdict, as it seems should have been done, especially in the light of the former decision, is one such as often occurs in this class of cases without suggesting any serious want of judicial attention. The burden of duty in such situations is not easy to bear. A high order of judicial courage is required to fully discharge it. That there are sometimes failures in that regard is by no means surprising. Such failures are generally quite excusable, notwithstanding the necessity to atone therefor here. But the more fully duty is discharged at the circuit in such matters, the more certainly justice in the ultimate will be measured out between parties, since a failure in that regard must be very clear to warrant rectification thereof here.

It is considered, as before indicated, that judgment should not go against appellant without his consent so as to avoid a third trial, unless plaintiff will consent to take $2,500, and costs. On the other hand, it is considered that the maximum amount that can reasonably be awarded to plaintiff by reason of his injury is $5,000. So far as proper practice will permit, we will respond to the request made by counsel upon both sides to terminate this litigation without further delay.

The disposition we have concluded to make of the matter, without invading the rights of the parties to a jury trial, will enable either to close the controversy speedily without the consent of the other.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial, unless defendant, within twenty days after receiving written notice of the filing of the remittitur in the court below, serves upon plaintiff's counsel consent in writing to judgment in his favor for $5,000, and costs, as heretofore taxed, or unless in case of failure to serve such notice plaintiff, within thirty days after such filing of the remittitur, serves upon defendant's counsel consent in writing to take judgment for $2,500, and costs, as heretofore taxed. In case of consent by either side, as indicated, judgment may be rendered upon application of plaintiff to the court having jurisdiction in the matter, without notice.