BEACH, Respondent, vs. BIRD & WELLS LUMBER COMPANY, Appellant.

*April 17—May 8, 1908.*

*Railroads: Fellow-servants: Contributory negligence: Question for jury: Evidence: Relevancy: Special verdict: Construction: New trial: Excessive damages.*

1. An engineer who inadequately repaired a broken handhold on the engine of the defendant was not while so doing a fellow-servant of defendant's brakeman who was injured while using such defective hold, the repairs being made after the day's work was over and in the discharge of a duty resting upon defendant.

2. In an action by plaintiff, a brakeman in defendant's employ, for damages received while using an inadequately repaired handhold upon the engine tender of defendant's locomotive, it appeared that defendant's superintendent had caused the handhold and other portions of the engine to be repaired, which gave the engine the general appearance of being in order. *Held.* that whether plaintiff was under the circumstances guilty of contributory negligence in not making a close inspection before using such hold was a question for the jury.

3. Where plaintiff's duties as defendant's brakeman required him to get on to the footboard of the switch engine while the engine was in motion, and on the occasion in question it was necessary, because of a carload of lumber coupled next to the tender, to adopt plaintiff's method of boarding, such method not being unnatural or extraordinary, *held,* that whether plaintiff was guilty of contributory negligence was a question for the jury.

Beach v. Bird & Wells Lumber Co. 135 Wis. 550.

4. In an action for damages sustained by plaintiff, employed by defendant as brakeman, while using an inadequately repaired handhold on defendant's switch engine, which hold defendant's superintendent, at plaintiff's request, had promised to repair, but which he caused to be repaired inadequately in such a way as to appear sound on casual inspection, the admission of a question as to whether plaintiff "supposed" that the repairs had been made so as to put the hold in its former condition was not reversible error. Plaintiff being under no absolute duty to inspect, his supposition or "belief" as to the promised repairs was relevant as bearing upon his omission to inspect.

5. A finding in a special verdict that an inadequately repaired handhold on defendant's engine was "unreasonably dangerous" was equivalent to a finding that such hold was not "reasonably safe," and therefore negatived the performance by the master of his duty as to safe appliances.

6. Where, in an action for injury to an employee from a defective handhold on defendant's engine, the special interrogatories, "Was the condition of the handhold such as to make it apparent to one knowing its condition that it was dangerous to use?" and "Did plaintiff, on the day of and before the accident, know of the dangerous condition?" were submitted, and the jury answered the latter in the negative, defendant cannot complain that the former was unnecessary.

7. In extending an option to parties in a personal injury case to have judgment entered for a less amount than that assessed by the jury, on the ground that the jury's finding was excessive, the trial court determined the minimum and maximum amounts which any fair and impartial jury might assess, ascertaining such amounts by what juries had done in similar cases, and what sums had been held excessively large or small, resolving all reasonable doubts in favor of making the minimum small and the maximum large. *Held* that, although the minimum fixed by the trial judge may have been too large, still the method adopted in ascertaining it was proper and fixed the amount as correctly as could be expected. TIMLIN, J., dissents.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Charles A. Vilas,* attorney, and *E. C. Eastman,* of counsel, and oral argument by *Mr. Vilas.*

Among other references upon the part of the appellant

were the following: *Sweet v. Ohio C. Co.* 78 Wis. 127, 47 N. W. 182; *Faber v. C. Reiss C. Co.* 124 Wis. 554, 102 N. W. 1049; *Albrecht v. C. & N. W. R. Co.* 108 Wis. 530, 84 N. W. 882; *Kerrigan v. C., M. & St. P. R. Co.* 104 Wis. 166, 80 N. W. 586; 2 Words & Phrases, 1319; *McKivergan v. Alexander & E. L. Co.* 124 Wis. 60, 102 N. W. 332; *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707; *Smith v. C., M. & St. P. R. Co.* 91 Wis. 503, 65 N. W. 183; *Ewald v. C. & N. W. R. Co.* 70 Wis. 420, 36 N. W. 12, 591; *Toner v. C., M. & St. P. R. Co.* 69 Wis. 188, 31 N. W. 104, 33 N. W. 433; *Rueping v. C. & N. W. R. Co.* 123 Wis. 319, 101 N. W. 710; 13 Cyc. 135, and note 78.

For the respondent there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

Among other references upon the part of the respondent were the following: *Wedgwood v. C. & N. W. R. Co.* 44 Wis. 44; *Brabbits v. C. & N. W. R. Co.* 38 Wis. 289; *Welty v. Lake S. T. & T. R. Co.* 100 Wis. 128, 75 N. W. 1022; *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586; *Hamann v. Milwaukee B. Co.* 127 Wis. 550, 106 N. W. 1081; *Bigelow v. C., B. & N. R. Co.* 104 Wis. 109, 80 N. W. 95; *Heddles v. C. & N. W. R. Co.* 77 Wis. 228, 46 N. W. 115; *Dugan v. C., St. P., M. & O. R. Co.* 85 Wis. 609, 55 N. W. 894; *Cummings v. Nat. F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Heath v. Stewart,* 90 Wis. 418, 63 N. W. 1051; *Baltzer v. C., M. & N. R. Co.* 89 Wis. 257, 60 N. W. 716; *Neilon v. Marinette & M. P. Co.* 75 Wis. 579, 44 N. W. 772; *Hinton v. Cream City R. Co.* 65 Wis. 323, 27 N. W. 147; *Ferguson v. Wis. Cent. R. Co.* 63 Wis. 145, 23 N. W. 123; *Nadau v. White River L. Co.* 76 Wis. 120, 43 N. W. 1135; *Schmidt v. M. & St. P. R. Co.* 23 Wis. 186; *Berg v. C., M. & St. P. R. Co.* 50 Wis. 419, 7 N. W. 347; *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777; *Wysocki v. Wis. Lakes I. & G. Co.* 121 Wis. 96, 98 N. W. 950; *Heer v. Warren-Scharf A. P. Co.* 118 Wis. 57, 94 N. W. 789.

TIMLIN, J.   The defendant owns and operates a line of railroad in Marinette county in connection with its logging and lumbering business, and has for some time and to a limited extent been carrying freight and passengers for hire on said railroad.   The plaintiff was employed by defendant and acting as brakeman.   On July 18, 1906, the footboard and handhold upon the engine tender of one of defendant's locomotives were damaged and broken in an accident.   The plaintiff requested Mr. Hollenbeck, superintendent of defendant having authority to hire and discharge, to have the handholds repaired.   The latter promised to have them repaired.   On the morning of July 19th, when plaintiff went out to work upon this engine, he noticed a new footboard on the engine and believed that the handholds had been repaired, but did not inspect them or notice them particularly.   Repairs had been made, but the handholds were insufficiently repaired, the principal one being merely tied on at the lower end with wire.   Later in the day in attempting to get on the footboard in the rear of this tender while the engine was in motion and in the discharge of his duty the plaintiff caught this defective handhold for the purpose of swinging himself on to the footboard.   The handhold gave way or swung loose, in consequence of which he fell so that the engine wheel ran over his foot, crushing it to such an extent as to require amputation of the foot; that, to quote the language of Dr. Bell, "He has the cuboid portion of the cuboid bone left.   Practically all he has to stand on is the heel bone with the assistance of that portion of the skiboid and half of the cuboid bone."   As we understand this, all the foot forward of the leg was amputated.

The plaintiff was twenty-three years old, was earning about $1.75 a day, had no trade or profession, and had five or six years' training in the common schools.   The plaintiff had a verdict for $20,000, and the trial court, upon motion for a new trial stating among other things that the damages

awarded by said verdict were excessive, granted said motion conditionally; that is to say, regarding $9,000 as the maximum amount for which an impartial jury would probably find a verdict for the plaintiff and $5,000 as the minimum, he awarded to the plaintiff the option to take judgment for $5,000 and costs, to the defendant the option to submit to judgment for $9,000 and costs, and in case neither party exercised his option the verdict to be set aside and a new trial ordered. The plaintiff elected to take judgment for $5,000 damages, and for this amount, with costs, judgment was rendered in his favor.

The appellant contends that the proof shows the plaintiff to be guilty of contributory negligence because he went upon the engine on the morning of July 19th without ascertaining whether or in what manner the handhold had been repaired, and that he was guilty of contributory negligence in the manner in which he attempted to reach the footboard at the time of his injury, and also because the handhold was repaired during the night of July 18th by the engineer at the request of the superintendent, and the engineer was a fellow-servant with the injured brakeman. Unless the insufficient repair of the handhold was the act of a fellow-servant there is little or no question of the negligence of the defendant, because the repair in this respect was utterly insufficient. Appellant's counsel contends, first, that the defendant is a private logging railroad, and therefore not within the provisions of sec. 1816, Stats. (1898); second, that because this particular repair of the handhold was made by the locomotive engineer and defectively made, the negligence was that of a fellow-servant. We find it unnecessary to pass upon this first contention of appellant, because on this second contention we are satisfied that, notwithstanding the handhold was repaired by the engineer, the latter in so doing was performing a duty which the master owed to the servant. This was not a repair made in the progress of the work while the plaintiff

and the engineer were at work. After the plaintiff's day's work was done and the damaged engine and tender were taken to the shop or place for repair the corporation could employ any person to make this repair, whether that person had been, during the day preceding and at other work, a fellow-servant of the plaintiff or not. Under such circumstances and while making such repairs the person making the repairs was engaged in the discharge of a duty which the corporation owed to the plaintiff, and which it could not escape by delegating that duty to another person under the circumstances above indicated. *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586; *Wedgwood v. C. & N. W. R. Co.* 44 Wis. 44; *Brabbits v. C. & N. W. R. Co.* 38 Wis. 289. Clearly there was negligence on the part of the defendant.

The question of plaintiff's contributory negligence was for the jury. On the day before the injury the plaintiff knew that the handhold and other portions of the engine tender were broken and he requested that the handhold be repaired. The defendant's superintendent promised to have the repairs made. On the morning of the day of the injury when plaintiff resumed work the engine tender presented the appearance of having been repaired. A close inspection of the handhold would no doubt have disclosed the manner and insufficiency of its repair. The plaintiff failed to make such inspection, but, assuming that repairs had been made as was promised and as would appear from a cursory examination, proceeded with his work. It was a question for the jury whether his conduct in this respect was that of an ordinarily prudent person. We cannot declare the contrary as matter of law. The manner in which the plaintiff attempted to reach the footboard while the train was in motion, by stepping with one foot upon the oil box projecting from the center of the nearest car wheel and swinging around the end of the tender on this handhold to the footboard, is not shown to have been an unusual method. On the contrary, the

plaintiff testifies that the handhold is used by brakemen when getting on the footboard at the rear of the engine, and that it was necessary to get on to the footboard in this way on the occasion in question because the carload of lumber on the car coupled next to the tender overhung the end of that car so as to prevent getting on the footboard in any other way. The duties of the plaintiff required him to get on this footboard while the engine was in motion, and there is nothing in the testimony which tends to show that his manner of getting on the footboard at the time in question was so unusual or extraordinary as to conclusively establish contributory negligence on the part of the plaintiff.

Error is assigned upon the admission of evidence. The plaintiff having testified he had not used the handhold on the day he was injured prior to the injury, and that he did not know the manner in which it had been repaired and had not noticed it, but that he knew that these handholds were fastened by a bolt or rivet, the following question was asked: "Q. I ask you this: Did you up to the time you were injured suppose that it had been bolted or riveted on as it was before it had been broken?" This was objected to as incompetent, irrelevant, and immaterial, calling for a mere supposition, and the objection overruled. The witness answered, "I expected it had been bolted or riveted on the same as it ought to have been." The question was leading in form, but not intrinsically objectionable. The word "suppose" is here used for "think" or "believe," or, as the witness answered, "expect." The question was whether he had a right to rest in that belief without inspection and examination. As the law casts on him no absolute duty of inspection or examination, it became a mere question of fact for the jury whether the course of conduct of ordinarily prudent persons would require such examination or inspection. The belief of the plaintiff that repairs promised had been made was relevant as bearing upon his omission to inspect. The court might

have sustained the objection on account of the form of the question, but there is no reversible error in admitting the evidence.

It is contended that the special verdict was improperly framed because the third question, instead of asking the jury whether the handhold was in a reasonably safe condition, inquired whether the handhold was "unreasonably dangerous to the plaintiff." It may be that things which are "not reasonably safe" are not in all cases "unreasonably dangerous," but it cannot be affirmed that anything "unreasonably dangerous" could be "reasonably safe." The finding, therefore, negatived the performance on the part of the master of his duty in this respect and was sufficient. The sixth and seventh questions were properly submitted. The defendant now considers the sixth question superfluous. The sixth question inquired, "was the condition of the handhold such as to make it apparent to one knowing its condition that it was dangerous to use," and the seventh question inquired whether the plaintiff on the day he was injured and before his injury knew of the dangerous condition of the handhold. These questions were apparently inserted in the special verdict for the benefit of the defendant; that is, to enable it to call for separate findings on these two items of fact which it might be disadvantageous to the defendant to cover by some more general conclusion of fact. If the seventh question had been answered "Yes" instead of "No," the defendant would not be here found contending that the sixth question was superfluous. There was no error in this respect.

Finally, it is contended that the court erred in granting a new trial conditionally, but should have set aside the verdict unconditionally, for the reason that there has never been any assessment of damages by the jury. In answer to a question of the special verdict the jury fixed the plaintiff's damages at $20,000, the full amount demanded in the complaint.

This is conceded by both parties to be excessive, and the defendant moved to set aside the verdict and for a new trial upon the ground, among others, that the damages awarded by said verdict were excessive.   The trial court on this motion filed a written opinion saying:

"The right and duty of this court to give the parties the option of having judgment entered for a less amount rather than be compelled to retry the case are no longer in doubt in this state.   *Rueping v. C. & N. W. R. Co.* 123 Wis. 319, 101 N. W. 710; *Heimlich v. Tabor,* 123 Wis. 565, 102 N. W. 10. And it is immaterial what caused the jury to render the excessive verdict.   It is sufficient that it is excessive from *prejudice or other cause.*   An excessively large verdict, in the absence of any other explanation, may be usually treated as *prima facie* evidence that the jury was not unprejudiced, fair, and impartial. . . . The court is not authorized to determine what amount of damages the plaintiff shall recover, thus substituting his judgment for that of the jury.   But the court is to determine the maximum and minimum amounts that an impartial and unprejudiced jury would probably name, as no two juries, fair and impartial and unprejudiced, would arrive at the same amount.   The question is, what would be the smallest amount that any such jury might assess and what the largest amount that any other such jury might honestly assess, and the only way suggested for solving this question is by ascertaining what such juries have done in similar cases and what amounts have been held to be excessively large or small.   When these two limits have been arrived at, reasonable doubts being resolved in favor of making the minimum small and the maximum large, the court then gives the defendant the option of consenting to judgment against him for the larger amount, and if he does not so elect the option is then given to the plaintiff to take judgment for the smaller amount, and in the event of neither option being exercised the verdict is set aside and a new trial awarded."

The trial court made an order accordingly fixing the minimum at $5,000 and the maximum at $9,000 and giving the option stated.   The plaintiff elected to take judgment for $5,000 rather than have a new trial.

Several members of this court consider the minimum fixed by the trial court too high and would reverse the judgment on that ground. The majority, however, are unwilling to reverse the judgment if the minimum is to be ascertained as indicated by the trial court, because ascertaining the minimum in that way it is probable that the minimum fixed by the trial court is as nearly correct as can be expected. The majority of this court, however, consider the mode adopted by the trial court of arriving at the minimum a correct one, and approve and adopt that part of the opinion of the court below herein quoted. For these reasons the judgment of the circuit court must be affirmed. The writer may be permitted to say that in his view, if the minimum is to be ascertained as indicated by the trial court, the amount fixed by the trial court is as nearly correct as can be expected; but he thinks the minimum should be ascertained upon a consideration of what the trial judge considers the minimum and not by a comparison with what juries have actually done in similar cases. The difficulty with the latter method of arriving at the minimum is that no jury ordinarily awards the minimum amount of damage actually suffered in such case. Small verdicts are the arbitrary result of compromise among the jurors. The verdict in every case represents the actual damage in that case except where there is error, passion, or prejudice. This mode of ascertaining the minimum will inevitably destroy the rule itself, because the minimum ascertained in this way will be constantly increasing, and what is termed a minimum will be really the actual and ordinary damages which an unprejudiced jury usually ascertains and awards, which is in truth not the minimum nor the maximum, but a sum between both. So that the rule will finally result, as in the case at bar, in giving the plaintiff an option to take a new trial or take judgment for the actual average amount of his damages as near as such can be ascertained, while the defendant's option will be to submit to a

judgment in excess of a fair admeasurement of the plaintiff's damages.    If this is a fair construction of the rule laid down in *Rueping v. C. & N. W. R. Co.* 123 Wis. 319, 101 N. W. 710, then I think that rule should be modified.    But I do not think that is a fair construction of the ruling in that case.    What the supreme court there appears to have done is to first place its own estimate upon the minimum damages and then to support that estimate argumentatively by citing instances of verdicts.    If there is no invasion by the court of the province of the jury in estimating the actual unliquidated damages of the plaintiff and granting a new trial conditioned upon the plaintiff remitting all excess found by the jury (*Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 337, 80 N. W. 644, and cases referred to), I do not see how it can be said that there is such invasion where the court estimates the minimum amount of such damage which an *ideal* unprejudiced jury would award to the plaintiff, and makes his grant of a new trial conditional upon the plaintiff's refusal to accept a verdict for that sum.

*By the Court.*—The judgment of the circuit court is affirmed.