OTTO, Respondent, vs. MILWAUKEE NORTHERN RAILWAY COMPANY, Appellant.

*December 8, 1911—January 9, 1912.*

*Electric railways: Negligence in starting car: Injury to licensee on steps: Duty of conductor: Contributory negligence: Evidence: Rules of company: Expert testimony: Cause of injury: Instructions to jury: Damages: Married women: Excessive damages.*

1. In an action for injuries sustained in falling from the steps of an electric car, where the proof showed that the car was equipped with modern appliances so that it could be started without any jerk, but that at the time in question it was started so suddenly as to throw a seated person violently back and to put one who was on his feet in danger of falling unless holding to something for support, a requested instruction to the effect that the mere sudden starting of an electric car is not in itself sufficient proof of actionable negligence, that affirmative proof is necessary of an unusual jerk, and that mere statements of a witness that the start was violent or sudden is not sufficient, was inapplicable.

2. Persons boarding passenger cars to see relatives and friends off and to assist them if necessary, in accordance with a common custom, are licensees and entitled to be treated with ordinary care by those in charge of the cars.

3. It is the duty of those in charge of an electric car to use reasonable diligence, before starting it, to discover whether a person who has stepped upon the car has mounted to the platform or stepped back to the ground.

4. A person is not guilty of want of ordinary care, as matter of law, in stepping upon the lower tread or proceeding to the platform of an electric car, with both hands engaged in carrying parcels.

5. In an action for injuries to a licensee by the sudden starting of an electric car while she was standing upon the steps, a rule of the company for the guidance of its servants requiring them to exercise the highest degree of care in handling cars to avoid injuring themselves or others, imposed a higher degree of care than the law required and was not admissible in evidence; but error in admitting it was not clearly prejudicial, the jury having thereafter been emphatically instructed that the company owed the plaintiff the duty only of exercising ordinary care for her safety.

6. In such action it was error to permit a physician who had attended plaintiff to testify that the fracture of her arm might have been caused by falling from a street car—that not being a subject for expert testimony; but, there being no question but that the arm was in fact broken in that way, the error was harmless.

7. If defendant's servants in charge of the car did not know of plaintiff's perilous situation on the steps or were not chargeable with knowledge thereof, that fact did not displace the duty to exercise ordinary care for her safety, but merely bears upon the question whether there was a breach of such duty in starting the car.

8. Where no limit to the amount recoverable for an injury is fixed by law, the trial court should not instruct the jury that the · damages, if any, must not exceed a certain amount, even though such amount is that named in the prayer for relief. The prayer does not govern or limit the amount of recovery, and such an instruction is likely to mislead the jury.

9. Recovery by a married woman for a personal injury, treated at the expense of her husband, is limited to reasonable compensation for suffering past and future, so far as discovered by the jury to a reasonable certainty.

10. In an action by a married woman to recover for personal injuries, the admission of evidence indicating that a loss of earning power was a part of her loss, in the absence of careful instructions to the jury that no element of lost earning power should be included in the damages, was misleading.

11. An award of $2,000 in such a case to a married woman fifty-five years of age for an ordinary fracture of the radius of the left arm near the wrist, which ran the ordinary course of such an injury to a substantial recovery in a few weeks, is reduced to $1,200.

Appeal from a judgment of the circuit court for Milwaukee county: F. C. Eschweiler, Circuit Judge. *Reversed.*

Action to recover compensation for personal injury.

Plaintiff accompanied her son, his wife and two children, and the wife's sister, to assist them, particularly the wife and children, to take passage on defendant's car. All but plaintiff intended to board the first car going their way. She carried a basket in one hand and some baby clothes in the other. As a car was seen approaching she efficiently signaled it to stop. Upon the car coming to a stand the party proceeded to enter; the man carrying a grip, leading. When all were aboard but plaintiff, she stepped upon the first tread to enable her to place the basket and clothes on the platform. As she was in the act of doing, or had just done, so, the conductor not being present to assist or in sight from her location, so far as she observed, the car, without any signal having been given, suddenly started with a jerk precipitating her to the ground, breaking her arm, and considerably disturbing other members of the party.

The cause was submitted to the jury, resulting in a verdict, holding defendant liable for negligent breach of duty to plaintiff in starting the car in the manner and under the circumstances mentioned, causing injury to her without any efficient contributory fault, and assessing her damages at $2,000. Judgment was rendered accordingly.

For the appellant there were briefs by *Flanders, Bottum, Fawsett & Bottum,* attorneys, and *James G. Flanders,* of counsel, and oral argument by *James G. Flanders.*

For the respondent there was a brief by *W. B. Rubin,* attorney, and *W. B. Rubin* and *H. B. Walmsley,* of counsel, and oral argument by *Mr. Rubin.*

Marshall, J. This is not a case within the class illustrated by *Wickert v. Wis. Cent. R. Co.* 142 Wis. 375, 125 N. W. 943, and the like, dealing with a situation created by a

Otto v. Milwaukee Northern R. Co. 148 Wis. 54.

person entering a railroad car as a licensee to see another off on a journey, and the railroad company's servant, not knowing or having reasonable ground to anticipate the entry is with the intention of going back before the starting time, efficiently signals for the start, resulting in such person being injured in his effort to leave the car. Had respondent here reached the platform before the car started and then returned to the lower step and dropped from it by reason of the car suddenly starting, such cases might cut some figure.

Neither is the case before us within the class illustrated by *Boston E. R. Co. v. Smith,* 168 Fed. 628, and similar cases which deal with the situation of a person who has boarded a car to the platform, and the car is started with the usual disturbance so that before he has time to reach a seat he is injured by being thrown about somewhat.

Just as plainly this is not within the class illustrated by *Hill v. L. & N. R. Co.* 124 Ga. 243, 52 S. E. 651, and the like, dealing with a situation of a person who has boarded a car to see some one off and is injured in trying to leave on account of the car starting without previous signaling, as was customary, to give a person so circumstanced opportunity to return safely to the outside.

Independently of the particular location of respondent at the time the car started, precipitating her to the ground, the case is not within the class illustrated by *Boston E. R. Co. v. Smith, supra,* and the like, therein referred to, relied upon by counsel for respondent, dealing with ordinary reasonably necessary jerking of an electric car in starting; (1) because they have reference to the effect of such ordinary jerking after a person has reached the platform, whereas here the respondent was on the lower step of the car where a sudden start would naturally imperil one's safety; and (2) because the evidence shows that there was something more than ordinary jerking. There was a violent start,—one that disturbed, abnormally, passengers who were seated. Moreover, while

it may be that some years ago an electric car, ordinarily, when properly handled, started with a jerk so such movement was to be expected, that is not the case now, necessarily, since by use of modern improvements, with which the proof shows the car in question was equipped, no such violent movement of the car was necessary so far as the manipulation of the appliance itself was concerned.

For the reason stated the instruction asked to the effect that the mere sudden starting of an electric car is not in itself sufficient proof of actionable negligence,—that affirmative proof is necessary of an unusual jerk, and that mere statements of the witness that the start was violent or sudden is not sufficient, so far as good law, does not apply to the case. Here the proof was that the car could be started without any jerk, but was in fact started so suddenly as to throw a seated person violently back and endanger one who was on his feet of falling unless holding to something for support.

There is little use in going further by way of reviewing cases cited by either side. It is doubtful if any of them throw any light on this case as regards similarity of facts, or in principle bear on it, except by way of illustrating and declaring what is freely conceded by respondent,—that it is such common custom, submitted to by passenger transportation companies, for persons to board cars to see relatives and friends off, and assist them when necessary, as in this case, that in doing so they are licensees and entitled to be treated by those in charge of cars with ordinary care.

Respondent was not guilty of any want of ordinary care, as matter of law, merely because she stepped upon the lower tread of the car. Defendant is not excusable for starting the car while she was in that position because its servants had no reason to anticipate that she did not do so as a passenger. Had she been such, to have suddenly started the car while she was so circumstanced would, at the best for appellant, have admitted of a reasonable inference of want of due care, if

those in charge of the car knew, or ought reasonably to have known, of her situation.   Obviously, it is the business of a railroad company to use reasonable diligence to discover whether a person who has stepped on a car has mounted the platform or stepped to the ground before starting.   It seems there was room in the evidence for the jury to conclude that there was a fatal omission of defendant in that regard.

True, respondent was badly incumbered, having neither hand free to help or save herself in case of her equilibrium being disturbed by a motion of the car or otherwise.   But it cannot well be held that a person is guilty of a want of ordinary care, as matter of law, in stepping upon the lower tread of a car or proceeding to the platform with both hands engaged in carrying parcels.   On the whole, it seems that there is no sound basis in the record for holding that the trial court was clearly wrong in submitting the question of actionable fault of appellant and that of contributory fault of respondent, to the jury.

Complaint is made because the court admitted in evidence a rule of the company for the guidance of its servants, requiring them to exercise the highest degree of care in handling cars to avoid injuring themselves or others.   Obviously, that had nothing to do with the case.   The law, not any rule of the company, was the test of defendant's duty.   Moreover, no such duty as that indicated by the rule, is legally required as regards a mere licensee.   Why the trial court permitted the introduction of a matter so very foreign to the case, is not perceived.   Moreover, why the illegitimate character of the evidence was intensified by the court, upon objection being made, remarking: "I cannot see that that does anything more than declare what the law would declare, but I think I will overrule the objection to that."   The jury may well have gotten therefrom the idea that the law required the high standard of care mentioned in the rule as regards the personal safety of a mere licensee like respondent, which, of course, is

not the fact. · The court evidently emerged from the delusion in that regard before the close of the trial, since we find the jury were very emphatically instructed that appellant owed the respondent the duty only of exercising ordinary care for her personal safety. Whether that wholly cured the error so as to render it nonprejudicial, is not free from difficulty.

Error is assigned because the court permitted a doctor, who attended respondent, when on the stand to give evidence as to the nature of her injury as he found it and the course and result of his treatment, to testify that the fracture of her arm might have been caused by her falling from a street car. No justification appears for allowing that. It was not a subject for expert evidence. True, there was no question but that respondent's arm was broken by a fall from the car, as alleged; so the error was probably not harmful. But such error and others in this case, which are so plain that it seems they ought not to have occurred, lead us to remark that the beneficial policy established by the Code and so often vindicated by the court of disregarding as inconsequential, all errors which do not prejudicially affect the substantial rights of the adverse party, in that had they not occurred the result might, within reasonable probabilities, have been more favorable to him, should not lead to inattention at the trial and promote the commission of error. It should stimulate careful rather than inconsiderate administration.

Complaint is made because the jury were instructed, in effect, that the defendant owed respondent the duty of ordinary care. Why such complaint is made is not appreciated. Of course such duty was owing to respondent. If defendant did not know of her perilous situation, or have such reasonable ground to know it as to be chargeable therewith, that merely bears on whether there was a breach of duty in starting the car. It does not displace the duty itself.

Further complaint is made because the court instructed the jury that if plaintiff was entitled to recover at all, her dam-

ages should be fixed at such sum as to fully compensate her for all damages she sustained by the injury, not exceeding in amount the sum of $5,000.

Why was such an instruction given? This court has, as counsel for appellant suggest, pretty plainly advised against such a practice. *Hupfer v. Nat. D. Co.* 127 Wis. 306, 313, 106 N. W. 831. The law placed no such limit as a guide for the jury. The pleading placed no such limit. True, the prayer was for $5,000, but that did not govern the amount of the recovery. It might have been more if the evidence warranted it notwithstanding the prayer. Why refer to the matter at all, especially in such a case where the danger is ever present of overestimating reasonable recoverable damages? Often a jury award, in such a case, is reduced by the trial judge and by this court, and sometimes by the latter after a reduction in the initial jurisdiction, while necessity for disturbing the verdict because of inadequacy very seldom occurs.

Jurors are liable, unless carefully cautioned, to be moved by sympathy, and this is said in no spirit of criticism. The steadying hand of a thoughtful, practical, appreciative judicial head is no more needed in any field of trial work than that of such cases as this.

Why needlessly use language in charging a jury, which has been treated with disfavor here and is plainly liable to convey a false prejudicial notion? The jury might well have inferred they were at liberty on the evidence to place the damage as high as $5,000, if they thought best. What other conclusion could they reasonably have come to? They must have thought that the limit of $5,000 was mentioned for some purpose of an obligatory nature.

So far as the result of the trial was to find appellant guilty of actionable negligence, it is thought no clear prejudicial error occurred which was not cured before verdict.

Turning to the amount of the damages, $2,000, in view of

the situation of respondent it looks large.   The nature of the
charge seems to account for it.   She was a married woman
about fifty-five years of age.   Much evidence was elicited
going to show that she was incapacitated for work for a con-
siderable period and that her ability in that regard had not
been fully restored at the time of the trial.   That evidence
does not seem to have been produced merely to show infirmity
in the arm with attendant pain, caused by the accident.   It
was not directed particularly to that but to the effect of the
injury upon respondent's working power as if that were part
of her loss.   That may well have misled the jury, since such
loss was not hers but her husband's.   The jury were not care-
fully instructed so as to guard against danger from evidence
of that kind, but rather the contrary, in being told that they
would find for plaintiff full loss not to exceed $5,000.   True,
the court instructed in general language not to include any
element of lost earning power, but such element was not ex-
pressly excluded, so it is not certain that it was not included,
as the jury understood the matter.

The injury consisted of an ordinary fracture of the radius
of the left arm near the wrist.   It was treated promptly and
scientifically, and, of course, at the cost of the husband.
There is no definite evidence that there was any other injury
than that mentioned.   It was painful, but not unusually so.
It ran the ordinary course of such an injury to a substantial
recovery in a few weeks.   She walked to the place where she
was treated and returned without assistance.   She was
treated by a surgeon some six or seven times.   A careful scru-
tiny of the evidence fails to disclose anything indicating that
the injury was attended with any very material special diffi-
culty.   It was ordinary of its kind.   Reasonable compensa-
tion for suffering, past and future, so far as discovered by
the jury to a reasonable certainty, was the utmost she was en-
titled to,—no pay for expense of restoration of the arm or
reimbursement for lost earning power.   Compensation upon
the basis of a full equivalent in dollars for pain and suffer-

ing was impossible.    An attempt to award it would have been unjust.    *Guinard v. Knapp, Stout & Co. Co.* 95 Wis. 482, 490, 70 N. W. 671.    The $2,000 was equivalent to an annuity for the woman of about $13 per month for life.    We cannot escape the conclusion that had there not been unguarded language used the assessment might have been as low as $1,200, and that an unprejudiced jury, properly instructed, in case of another trial might, within reasonable probabilities, assess as low a sum.    It seems that to permit respondent to take judgment for any greater sum than that regardless of the wishes of appellant, would violate the right of trial by jury. *Rueping v. C. & N. W. R. Co.* 123 Wis. 319, 101 N. W. 710; *Heimlich v. Tabor,* 123 Wis. 565, 102 N. W. 10.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to allow plaintiff to take judgment for $1,200 and costs, if she elects to do so by motion therein on notice to the opposite counsel within sixty days after the *remittitur* reaches the court below, and in case of such election not being so made then for a new trial.