BELSTNER, Administratrix, Respondent, vs. TOWN OF SUMNER, Appellant.

*May 22—June 17, 1914.*

*Highways: Defect causing death: Spinal meningitis as result of fall: Proximate cause: Instructions to jury: Excessive damages.*

1. In an action for the death of plaintiff's intestate, alleged to have been caused by injuries received when he fell from a wagon by reason of a defect in a highway, the evidence (consisting largely of the opinions of medical experts) was sufficient to make it a jury question whether the cerebro-spinal meningitis of which he died, resulted from such fall.

2. In case of a special verdict, a general instruction touching the general question of the right of recovery has no proper place in the charge.

3. An award of $5,000 for the death of a workingman forty-nine years old is *held* excessive, where the evidence showed that he left a widow but no other dependents, that he was always in good health and could earn "good wages," but did not show how much he earned or could earn *per diem* or that he had accumulated or would have been likely to accumulate any property. An option is given to take judgment for $3,000.

SIEBECKER and TIMLIN, JJ., dissent in part.

APPEAL from a judgment of the circuit court for Jefferson county: GEORGE GRIMM, Circuit Judge. *Reversed.*

This action was brought to recover damages for the death of George Belstner, the husband of the plaintiff, whose death is claimed to have been caused by injuries resulting from a

fall from a wagon while riding on a defective highway in the defendant town. The deceased was sitting on the rear seat of a milk wagon at the time of the accident. The wagon struck a ledge of rock in the highway and the deceased was thrown backward to the ground, striking on his head. He worked for three days thereafter, but was unable to work any longer, and died two days later of cerebro-spinal meningitis. The jury returned the following special verdict:

"(1) Did George Belstner's death result from an injury received by him in falling out of a wagon and striking on his head in a public highway at the time and place alleged in the complaint? *A.* Yes.

"(2) Was the highway in question, at the time and place of the injury, in an unsafe condition for use by persons exercising ordinary care? *A.* Yes.

"(3) If you answer the second question in the affirmative, then answer this: Had such unsafe condition existed a sufficient length of time prior to the injury that the town, in the exercise of ordinary care on part of its officers having charge of its highways, ought to have discovered such unsafe condition in time to have repaired it, if they acted with reasonable promptness? *A.* Yes.

"(4) If you answer the second question in the affirmative, then answer also this: Was such unsafe condition of said highway the proximate cause of the injury? *A.* Yes.

"(5) Did any want of ordinary care on the part of the deceased proximately contribute to produce the injury? *A.* No.

"(6) What sum of money will compensate the plaintiff for the damages she sustained by reason of the death of George Belstner? *A.* $5,000."

Judgment for the plaintiff was entered on the verdict, and the defendant appeals.

*L. B. Caswell,* for the appellant.

*Frank H. Rogers,* attorney, and *R. B. Kirkland,* counsel, for the respondent.

WINSLOW, C. J. The verdict in this case is amply sufficient to sustain the judgment. If the findings of the verdict

are sustained by sufficient evidence and there are no substantial errors in the charge of the court or the rulings and evidence, the judgment must be affirmed, unless, indeed, the damages be excessive.

The appellant claims in substance that (1) there is no proof that the spinal meningitis resulted from the fall from the wagon; (2) that there was no actionable defect in the highway shown; (3) if there was a defect it had not existed long enough to charge the town officers with notice of its existence; (4) instructions on the subject of proximate cause were erroneously refused; (5) the deceased was guilty of contributory negligence; (6) the damages are excessive.

It is not deemed profitable or necessary to enter into any discussion of the second, third, and fifth of these claims. Examination of the evidence shows very clearly that all of these questions were questions for the jury upon the evidence and that they were properly submitted, or at least without any substantial error.

As to the first question the result is not so obvious, but we have come to the conclusion that the evidence was sufficient to carry the case to the jury. The fact that cerebro-spinal meningitis sometimes results directly from trauma, or physical injury, seems to be well supported by the evidence of physicians. Whether it did so result in this case was a question which depended principally upon the opinions of the expert witnesses, and those opinions were necessarily founded upon hypothetical questions involving the history of the accident and of the condition of the patient prior to his calling a physician on Wednesday. There was, of course, a radical disagreement between the conclusions reached by the physicians, but two of them certainly gave evidence on the subject tending to support the conclusions of the jury. When it is remembered also that the illness of the deceased followed closely upon the injury with no apparent intervening cause, and that he had been up to that time in perfect health for

years, we think it clear that the evidence was sufficient to take the case to the jury.   Complaint is made as to the form of the hypothetical question put to the plaintiff's medical witnesses, in that it stated as facts some particulars which the evidence did not substantiate.   It must be admitted that the question was not entirely accurate.   We do not think, however, that the inaccuracy was of sufficient importance to be considered substantial and it is not considered necessary to state it in detail.

The subject of proximate cause was fairly covered by the fourth question of the special verdict, and in charging the jury on this question the court gave the correct definition of proximate cause and went no further.   The defendant requested an instruction to the effect that if there were two proximate causes, one a defect in the road and the other want of ordinary care on the part of the deceased, "the plaintiff cannot recover."   This instruction was refused by the court and the defendant now complains of this refusal.   The ruling was correct.   In case of a special verdict, a general instruction touching the general question of the right of recovery has no proper place in the charge.   *Johnson v. St. Paul & W. C. Co.* 126 Wis. 492, 105 N. W. 1048.

We think, however, the damages must be considered as excessive in view of the meagerness of the evidence as to the earning capacity of the deceased.   Substantially the only facts proven bearing on the question were that the deceased was a strong, able-bodied man, forty-nine years of age, weighing 180 pounds, who had always been in good health and could always earn good wages; that he had been working before his illness for some time at the shop of the Creamery Package Company at Fort Atkinson, running a machine; that he was a steady worker, was the sole means of support of his wife, and that he had no children.   The evidence fails to show how much the deceased earned or could earn *per diem,* or whether there was any reasonable probability of his ac-

cumulating property or doing more than furnishing his wife the bare means of subsistence. We have no means of ascertaining what was meant by the words "good wages." These words are relative, not absolute, and may mean much or little according to the viewpoint of the person who uses them. There is no hint in the evidence that the deceased at the age of forty-nine had been able to accumulate a dollar's worth of property. The inference must naturally be that his daily wage cannot have been large, especially in view of the proof that he was a steady worker. In the present case the sole beneficiary is his widow, and she had the right unquestionably to expect her support during the expectancy of life of the deceased. In cannot be reasonably anticipated, however, in view of the evidence, that this support would have been anything more than the mere necessaries of life in a very humble station. In view of this situation the damages seem to us to be plainly excessive. While we must reverse for this, we shall, as is our usual custom, allow the plaintiff to elect to take judgment for the smallest sum which in our judgment a fair and just jury would in all reasonable probability render on the evidence. That sum in this case is $3,000.

*By the Court.*—Judgment reversed, and action remanded for a new trial, unless the plaintiff within thirty days after the filing of the *remittitur* in the court below shall elect in writing to take judgment for $3,000 and costs, in which case the trial court is to render judgment for the plaintiff in accordance therewith.

SIEBECKER, J., dissents as to reduction of damages.

TIMLIN, J. (*dissenting in part*). Plaintiff, widow and administratrix of the estate of George Belstner, brings this action against the defendant for damages accruing to her on account of the death of her husband, caused, it is claimed, by

a defective highway which the defendant negligently allowed
to remain in that condition.    Evidence tends to show that at
a point where the highway passed through a rock cut some
quarrying was done which left part of the roadbed about three
feet lower than the remainder, and an almost perpendicular
wall of rock about three feet in height and extending diag-
onally across the roadbed marked the junction of the higher
and lower levels of the road.    To make this available for
travel the lower portion was so filled up with earth as to make
a slanting ascent to the higher level.    The drainage from this
clay filling was imperfect or nonexistent, so that in wet
weather it became soft mud and gave way under the wheels
of passing vehicles, while the rock of course remained, thus
causing a severe jolt to vehicles passing over.    Apprehending
danger from some recent experiences with other travelers, a
few days before the accident a neighboring farmer, a former
road overseer of the defendant, hauled in a load of soft earth
and dumped it on top of the former fill and close to the rock
ledge so as to break the force of contact with the perpendicu-
lar rock, and with this last fill the crossing ledge projected
about two inches over the soft clay.

There is ample proof of notice to the town and of such
long-continued insufficiency of the highway in the particulars
aforesaid that the town, in the exercise of ordinary care,
should have discovered and remedied the defect.    There is
also evidence from which the jury was authorized to find the
existence of an actionable defect or insufficiency under the
statute.    Sec. 1339, Stats. 1913.

It is argued that the court should have directed the jury to
return a verdict for defendant because there is no evidence
tending to show that the death of George was caused by the
defect or insufficiency of the highway.    On Sunday after-
noon, July 21st, deceased was riding in a wagon driven by
another on the highway, and when this point was reached the
wagon gave a severe jolt and threw him out on the road.    He

landed on his head with force, indicated by the crushing and tearing of his hat and by his exclamation to the effect that he thought his neck was broken, he had heard it crack.   He complained of pain in his neck on the way home from the place of accident, but on Monday morning went to work at his usual occupation of machine operator in a manufactory. There is no evidence of further complaint or suffering until Tuesday noon, when he informed the foreman of illness and that unless he felt better he would not return to work the next day.   He did, however, return to work on Wednesday and worked something more than half a day, then went home sick. Dr. Bennett came to see him on Thursday and found him suffering from a difficulty which the doctor termed "inflammation of the brain and cord, meningitis."   He gave the doctor a narrative to aid the latter in diagnosis.   He died the next day.   This doctor testified that the conditions he found existing could have been brought about by the fall described. See cases cited in *Bucher v. Wis. Cent. R. Co.* 139 Wis. 597, at pp. 610, 611 (120 N. W. 518), and also *Otto v. M. N. R. Co.* 148 Wis. 54, 60, 134 N. W. 157.   Dr. Smith in answer to an hypothetical question testified in substance that in his opinion the condition termed by Dr. Bennett meningitis was caused by the fall and that he would have no doubt that this was the cause.   It is said that meningitis is a germ or bacterial disease, that it attacks strong and apparently well persons without any known cause, and is quite mysterious in its origin, all of which may be conceded.   But the term is also apparently used to indicate any inflammation of the meninges or membrane which incloses the spinal cord and brain. There are so many unsolved and doubtful problems relating to the bacterial origin of diseases and the habitat of the bacteria prior to the advent of the disease that it would not be either modest or wise to pronounce definitely upon such questions as legal questions.   Absolute certainty of the cause of death usually is unattainable, and the best that can be expected

is a high degree of probability. Up to the time of the acci-
dent the deceased had been in good health. The fall was a
severe one, death followed within five days, and from the time
of the fall until death symptomatic observation indicated an
injury to the vertebræ of the neck. This, added to the opin-
ions of the qualified physicians, which are not incredible or
extravagant, makes out a case from which the jury might find
the death was caused by the defect in the highway.

The defendant requested an instruction to the effect that
the plaintiff must prove by a preponderance of the evidence
that the fall from the wagon was the cause of the death.
This the court refused, but a question of the special verdict
asked: "Did George Belstner's death result from an injury
received by him in falling out of a wagon and striking upon
his head in a public highway, at the time and place alleged
in the complaint?" He instructed the jury that: "The bur-
den of proof as to each of said questions is upon the affirma-
tive of the question, and you should, therefore, not answer
either question in the affirmative, unless you are satisfied
from a preponderance of the evidence, to a reasonable cer-
tainty, that they should be so answered." The requested in-
struction was therefore sufficiently covered by the general
charge and no error resulted from its refusal.

It is contended that the damages of $5,000 are excessive.
There was evidence that the deceased was married, childless,
aged forty-nine years, in good health, faithful and industri-
ous at his work, and his last employer testified that during
two and a half years' employment he had not lost a day from
sickness. The only evidence of his earning capacity is that
he operated some sort of a machine in a factory and "earned
good wages." This omission to prove what he earned and
what his habits of thrift were and what property, if any,
he had accumulated was quite a serious oversight. There is
evidence that deceased had been married twenty years and
that his widow has no property and that he was her sole

means of support, but there is nothing to show how old she is.
There is nothing upon which to base a recovery for the loss of
probable future accumulations of property; rather the con-
trary is suggested. We do not know what is considered
"good wages" for an operator upon this undescribed machine.
It might perhaps be assumed that he received at least the
wages of an ordinary laborer, and we might take judicial no-
tice that these are from $1.50 to $2.50 per day, depending
upon season and locality. But we do not know the wages in
this locality. We might perhaps also take judicial notice of
his expectancy of life according to the tables mentioned in
sec. 3871*m*, Stats. 1913, relating to dower. But we do not
know the widow's age, we do not know what number of days
in a year he was accustomed to work, nor what proportion of
his wages went for his personal expenses. In this evidence
there can be found no basis upon which either the jury or
this court can properly estimate plaintiff's damages. *Sweet
v. C. & N. W. R. Co.* 157 Wis. 400, 147 N. W. 1054, and au-
thorities cited. This opinion last cited received the unani-
mous approval of this court, as I understand it. If such
evidence sustains a recovery for any sum it sustains a five
thousand dollar recovery just as well as it sustains a three
thousand dollar recovery. The notion that indefinite evi-
dence pointing to no ascertainable amount will sustain a ver-
dict for $3,000 but not one for $5,000, and that evidence
insufficient to support a verdict of the jury because of in-
definiteness is nevertheless sufficient to support a verdict of
this court on the question of damages, seems to me quite illog-
ical. The plaintiff has a constitutional right to have these
damages fixed by a jury. Const. art. I, sec. 5. If the evi-
dence pointed to a somewhat definite amount less than that
fixed by the jury, then perhaps this court could act by fixing
what it considered the maximum amount which a fair jury
would ordinarily give on this evidence, and give the plaintiff
the option to accept that amount or submit to a new trial.

But that is not the case here. I believe the constitution is binding, not only upon the legislature, but also upon this court, and if "right of trial by jury shall remain inviolate" the plaintiff has a right to have her damages fixed by jury and not by this court, except in such cases where the verdict of the jury is impeached by the evidence given in the case, and in the latter case the amount of recovery approved by this court must rest upon evidence, not upon mere conjecture. When in the future there shall come to this court the verdict of a jury in a like case for the amount fixed by this court and resting upon like evidence or lack of evidence, it should be affirmed if the rule here established is to prevail.