MARGARET BYRON, administratrix, *vs.* LYNN AND BOSTON
RAILROAD COMPANY.

Essex.   November 7, 8, 1900. — January 2, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

In an action against a street railway company under St. 1886, c. 140, to recover for
the death of the plaintiff's intestate by reason of the gross negligence or care-
lessness of its servants or agents, with a count at common law to recover for the
injury and conscious suffering of the intestate, it appeared that the plaintiff's in-
testate was standing on the rear platform of a short car of the defendant, that
there were no gates on the car, that, as the car was passing from a turnout to
return to the main track at a rate of speed of from three and one half to four
miles an hour, there was a swaying or jar, and the plaintiff's intestate fell or was
thrown from the car, was found unconscious beside the track and died within
twenty-four hours. *Held*, that the evidence would not justify a finding that the
accident was due to negligence of the defendant or of its servants.

TORT, to recover for the injury, conscious suffering, and death
of the plaintiff's intestate, by reason of a fall from the platform
of a car of the defendant company.   The first count was under
St. 1886, c. 140, allowing recovery for the loss of life of a pas-
senger by reason of the gross negligence or carelessness of the
servants or agents of a street railway company while engaged in
its business.   The second count was at common law to recover
damages for conscious suffering.   Writ dated March 9, 1899.

At the trial in the Superior Court, before *Pierce*, J., the evi-
dence tended to show that the intestate boarded a closed car
of the defendant company in Lynn at about ten o'clock in the
evening of January 21, 1899; that it was a short car; that there
were no gates on the car; that all of the seats inside the car
were taken, and that people were standing, both inside the car
and on the platforms; that there were six or seven on the rear
platform; that the intestate took a position on the rear platform
of the car, between the step and the door on the right-hand
side of the car as it proceeded; that he stood with his back to
the body of the car, and it did not appear whether or not he had
hold of anything in order to steady himself; that the car pro-
ceeded without incident until it came to the turnout or switch
in front of the Corbett Schoolhouse on Franklin Street; that it

passed over the first frog and went to the right along the siding, and then turned to the left on to the main track again; that as it was passing over this second frog there was a swing or jar, and the plaintiff's intestate fell or was thrown from the car; that the car was stopped and the intestate was found unconscious beside the track; that he was taken to the Lynn Hospital, where he died within twenty-four hours.

Different witnesses described the cause of the accident as follows:

" As the car came to the main line it gave a kind of a swing and a jar and shake, and I probably would have been thrown off myself if I had n't held on."

" I was leaning back to the railing, and caught the railing myself. It kind of gave me a jar."

" The car came right on quick and jumped over the switch, and that is where the man fell off — went off quick. The tail end of the car gave a jerk."

" I recall the occurrence of the car's passing over the switch from the turnout. I noticed they were going very fast, and that it kind of jolted the car awfully hard, and I spoke about it."

" As the hind wheels got on to the main track the car took one motion — just one motion. I saw deceased was falling and I grabbed him by the coat, by the shoulder and gave one pull, but could n't hold him."

" It gave me a jar and knocked me over, my hand against the sash of the window. I came near falling over the lady I had given my seat to."

" As the car passed over the switch on the West Lynn side of the turnout, I noticed the car was going over the switch quite fast and that it jarred almost everybody that was on the car. I happened to look around deceased's way; he was standing right side of the door, and when the car came over that switch deceased fell down."

There was evidence tending to show that the car was going at the rate of from three and one half to four miles an hour at the time of the accident.

At the close of the plaintiff's case the presiding judge directed a verdict for the defendant on both counts of the declaration; and the plaintiff excepted.

*R. W. Nason,* for the plaintiff.

*H. F. Hurlburt,* (*D. E. Hall* with him,) for the defendant.

BARKER, J.    Upon full consideration of the evidence we are of opinion that it would not justify a finding that the defendant was negligent.    The car was a short one running upon a single track, and had no gates upon the platforms.    But such cars are common.    There is no statute which forbids their use or requires them to be equipped with gates.    The use of such a car was not negligence.    The plaintiff's intestate was thrown to the ground by a swaying, or jolt, or lurch of the car, as it returned to the main track from a siding.    Such motions of street cars are of common and frequent occurrence, and are to be expected to a greater or lesser degree whenever the car passes from one track to another, and so are of the class of usual and unavoidable incidents in the use of cars upon the streets.    *Holland* v. *West End Street Railway,* 155 Mass. 387.    *Mc Cauley* v. *Springfield Street Railway,* 169 Mass. 301.    Unless they are unusual in degree and caused by some defect in the car or the track or by some unusual or dangerous rate of speed, they furnish no evidence of negligence on the part of the carrier or of its servants. See *Baltimore & Yorktown Turnpike Road* v. *Cason,* 72 Md. 377 ; *Francisco* v. *Troy & Lansingburgh Railroad,* 78 Hun, 13.    There was no evidence that the jolt was due to any defect in the car or in the track, or that the car was proceeding at an extraordinary speed.    The witnesses who gave an estimate of the speed placed it at from three and one half to four miles an hour, and there was no one who testified that the rate was either unusual or dangerous.    The jar felt by the different witnesses was not so great as to be unusual, or as to justify a finding that it was due to negligence of the defendant or of its servants.

*Exceptions overruled.*