## JOHN FARNON *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Worcester.    November 21, 1901. — January 1, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Negligence,* Contributory, On railroad.

In an action against a railroad company by a passenger on an excursion train for having his fingers crushed between the platforms of two cars when thrown down by the jar from a sudden backing of the train, it appeared, that the plaintiff had boarded the last car just before the train started, that there were fifteen cars on the train, that the plaintiff walked through seven, all of which were crowded, the seats being full and people standing in the aisles and on the platforms, that he looked through the cars ahead, the doors being open, and every car appeared to be crowded, and he testified that it was "useless to seek for a seat further," that he stood about a yard back from the open door of the seventh car when the train stopped and there was a forward movement to see what was the matter, that he went to the threshold of the car but not over it and had been there about fifteen seconds when the accident happened. It appeared, from the defendant's evidence, that there were eleven hundred and two seats on the train and nine hundred and fifty-two passengers, and that there were plenty of vacant seats in the two front cars. *Held,* that the fact that the plaintiff was standing was not conclusive against him, that the jury might have found that the plaintiff believed that the cars ahead were as crowded as the seven through which he passed, and that he was in the exercise of due care.

*Semble,* that if a passenger in a railroad train is standing when he might have been seated and is injured by an accident which could not have happened to him if seated, he cannot recover.

In an action against a railroad company for injuries caused by the plaintiff when standing in a crowded car being thrown down by the jar from a sudden backing of the train, it appeared, that the train had been stopped on a steep up grade on a curve by the application of the air brake by some person not in the defendant's employ, that it was a crowded excursion train of fifteen cars with a single engine, not the largest, which had never been used before on a fifteen car train, that in order to start the train it became necessary to back down and get the slack between the several cars to aid the engine by the momentum of each car started separately, and it was in backing to do this that the accident was caused. *Held,* that there was evidence of negligence on the part of the defendant; that the jury were justified in finding that the defendant was negligent in putting so heavy a train behind a single engine of the kind used, so that, if the train was stopped in a bad place, the engine could not start it without being likely to throw down passengers known to the defendant's servants to be standing in the cars.

TORT by a passenger on an excursion train of the defendant, for having his fingers crushed between the bumpers of the plat-

forms of two cars when thrown down by the jar from a sudden backing of the train.   Writ dated September 25, 1899.

At the trial in the Superior Court, before *Gaskill*, J., the facts appeared in evidence which are stated in the opinion of the court.   The plaintiff described the accident as follows : That when the train was on a steep up grade it stopped ; that the plaintiff " waited for a few seconds, then everybody moved to the platform to see what was the matter; that he moved to the door the same as everybody else ; that he got as far as the threshold of the door ; that he did not go upon the platform at any time ; that after he got as far as the threshold, he stood there ; that the next that occurred was, it seemed to him, as the brakes were let loose, the train went back with a jar, it seemed as if there had been two or three freight cars in front of it and ran into it, it jarred so much ; that he never felt any jar like it on a passenger train in his life ; that the effect that this jar had upon him was something that shook him all up and threw him down, threw him right forward ; " with the result, that his hand was caught between the bumpers, and he received the injury.   The plaintiff later stated : " that he should judge he had been standing on the threshold about fifteen seconds when this motion came, which threw him down."

At the close of the evidence, the defendant asked the judge to make the following rulings : 1. There is no sufficient evidence to warrant a verdict for the plaintiff.   2. There is no sufficient evidence to warrant a finding that the plaintiff was in the exercise of due care.   3. There is no sufficient evidence to warrant a finding that the defendant was guilty of any negligence causing the injury.   4. The plaintiff fails to show that he was standing in or near the open door of the car through any necessity, or for the want of a seat inside the cars, and therefore cannot recover.   5. If the plaintiff could have obtained a seat in the cars in the forward part of the train, he was not justified in standing in or near the open door of a car so as to be thrown out upon the platform by a motion of the train.   6. If the plaintiff passed through several cars which were filled with passengers, and then stopped and stood in or near an open door of a car, intending to ride there, and was thrown down and injured by a motion of the train, he cannot recover unless he proves that there

was no seat which he could have obtained in other cars on the train, where he would have been safe from such an accident as this. 7. The plaintiff's evidence fails to prove anything more than that he elected to stand or ride in or near an open door of a car, and was thrown off his feet and injured, when he might have found a seat inside the cars on the train where he would not have suffered such an injury.

The judge declined to give the first four rulings and the seventh, and declined to give the fifth and sixth in the form in which they were presented. Upon the subject involved in the fifth and sixth rulings, the judge instructed the jury as follows : " So you have the right to take into consideration therefore, in passing upon the due care of the plaintiff as to his age, as to what opportunities for knowledge were possessed by him, what his position was, and what was afforded him by the railroad as to a bettering of his position, because if a railroad company furnishes for its patrons ample and sufficient accommodation for each of its passengers to be seated, then the duty of the passenger is ordinarily as he is riding to occupy a seat, and not to put himself in a position upon the platform, for instance, of a car, unless you say it is a reasonably necessary thing when he is seeking in a proper and careful, and reasonably prudent way to obtain a seat. It is not a justifiable thing for a passenger thus provided with seats to stand in a place of greater danger, or occupy a position of greater danger. The test, of course, in all these cases is the act of the ordinarily prudent and careful person under the given circumstances. First then here, were there vacant seats upon this train which the plaintiff might have occupied ? If there were none, then it is for you to say whether if he occupied a standing place convenient, it was a failure on his part to exercise due and proper care. If there were seats provided, then what means did the plaintiff take to ascertain as to those seats ? How far did he go ? According to his own statement, he went seven or eight cars. He looked forward. He says he could see to the front of the train. How far could he see ? How far did he see ? If at that point, he or a person of ordinary intelligence and care, from the examination, from the knowledge which he then had, reasonably would come to the conclusion that from his view in front the same condition existed

as in the cars that he had already passed through, if that condi-tion was one of congestion, no vacant seats which could be had, then it is for you to say whether it was a prudent and careful act upon his part to stand in or near an open door. Was any information given to him by any of the officials in charge, either in whole or in part of the train? Was there any request upon their part that he should go forward, or go anywhere, and occupy seats provided? As you shall determine with reference to that, so it will be made an easier matter to determine whether he was in the exercise of due care. If, however, there were seats, and he ought to have known that there were, and he voluntarily stopped in his way, abandoning any desire to obtain a seat, and intending to ride upon the platform, that would not be upon his part conduct that could be called due care. But, in passing upon that, as I have already said, you are to take into considera-tion all the circumstances, all the situations, all the knowledge, either which he had, or which he ought to have had, all the in-formation given him by the officials or by those in charge either in whole or in part of the train of cars. And, according in view of that, and with the statement which I have made to you, it is for you to say whether the plaintiff was in the exercise of due care."

The defendant excepted to the refusal to give the first four rulings and the seventh, and to the modifications of the fifth and sixth rulings. The jury returned a verdict for the plaintiff in the sum of $1,500; and the defendant alleged exceptions.

*W. C. Mellish,* for the defendant.

*H. Parker & C. C. Milton,* for the plaintiff.

LORING, J. While the plaintiff was a passenger on an ex-cursion train of the defendant railroad, his fingers were caught between the bumpers of the seventh and eighth cars from the rear end of the train, and were held there for twenty seconds, while the train was backing. He put in evidence showing that he was standing just within the threshold of the forward door of the car in question and was thrown forward on to his hands by the train backing violently, and that when he fell his hand was on the edge of the platform and his fingers were caught be-tween the bumper of that platform and that of the car in front of it.

The defendant contended that the plaintiff's fingers were caught while he was reaching down to pick up a cigarette which he had dropped; but that contention is disposed of by the verdict, and the only questions before us are whether the jury were warranted in finding for the plaintiff and whether the instructions were correct under which they gave him a verdict.

The plaintiff and the defendant do not differ materially as to the movements of the train at the time in question. The plaintiff's story is that the train stopped between stations; that some little time after it stopped it went back with a jar which threw him down, and a second jar caught his hand. The defendant's evidence showed that the train was stopped by the application of the air brake by some person not in its employ; that the train was stopped at a steep up grade on a curve, and that in order to start the train it became necessary to back down and get the slack between the several cars; when this is done, each car is started separately, and the momentum of those which have been started helps the engine in starting the cars behind those which have been put in motion. In this case it appeared that the engineer tried to start the train in this way three or four times; that the fourth or fifth time he tried it, he had the brake on the last car set by hand, and that he then was successful.

The defendant's first contention is that, on the evidence, the plaintiff was not in the exercise of due care. The plaintiff's testimony was that he boarded the last car of the train just before it started, and walked through seven cars, all of which were crowded; all the seats in the car were full and " people in the aisles and people on the platform " ; that when he reached the forward end of the seventh car, he looked through the cars ahead, the doors being open, and every car was crowded; that " there was more of a crowd ahead than there was behind," and that it was " useless to seek for a seat further " ; that he stood about a yard back from the door of this car until the train stopped, as we have stated, when there was a movement forward to see " what the matter was " ; that at that time he went to the threshold of the car, but not over it, and had been there some fifteen seconds when the accident happened. The defendant's evidence showed that there were some eleven hundred and two seats on the train and nine hundred and fifty-two passengers, and that there were

plenty of vacant seats in the two front cars; its contention was that it was the duty of the plaintiff to be seated, and that he cannot recover for an accident which it is manifest would not have happened to him if he had been sitting down. If the plaintiff had elected to stand when he might have sat, we should agree to this contention; but if the jury found that the plaintiff believed that the cars ahead were as crowded as were those seven through which he went, they might well have found that he was in the exercise of due care. Though he testified at the trial that " the number was limited to one thousand, that was supposed to go on the excursion," and that he knew there were fourteen or fifteen cars, it does not follow, as contended by the defendant, that he knew that there were seats for all; the seating capacity of a car is not a matter of common knowledge, and certainly not necessarily within the knowledge of a boy between sixteen and seventeen years of age, working in a machine shop for $12 a week; and, as the plaintiff testified, there might have been persons on the train " not riding on excursion tickets "; and finally, no suggestion that there were seats in the front car was made either by the conductor, who took the plaintiff's ticket as he was going through the seven cars, through which he went in search of a seat, nor by the brakeman, who stood between the forward end of the seventh car, the car in question, and the eighth car during the hour and a half that the train was in transit between Boston and the place in question, where it stopped. As to the further point made by the defendant, that there was no evidence that there were not enough seats for all the passengers and yet the presiding judge left that question to the jury, we agree that the plaintiff could not have seen that there was not a seat in any one of the eight cars ahead of him, and his testimony cannot be taken to be evidence to that effect; but the jury might have disbelieved the testimony of the defendant's witnesses or found that they were mistaken; for this reason, there was no impropriety in leaving it to the jury to decide whether there were vacant seats in the forward cars. For these reasons, we are of opinion that the fact that the plaintiff was not seated is not conclusive against him, and that the presiding judge was right in leaving to the jury the question whether he was in the exercise of due care and that the instructions under which that question was left to the jury were correct.

We are also of opinion that there was evidence of negligence on the part of the defendant. It is too narrow a view of the case to say, as contended by the defendant, that there was no negligence because the train came to a standstill on a heavy up grade' and on a curve, without fault on its part; and there was no evidence that more force, or a different kind of force, was used than was necessary to start it. Apart from the right of the jury to disbelieve the evidence as to the force used, the jury might well find that the defendant was negligent in putting so heavy a train behind a single engine, which the engineer admitted was "not the largest," and was one which he had never before used on "15 car trains"; for although he testified that its "capacity to draw fifteen loaded passenger coaches was all right, power enough for that train," yet the jury were justified in finding from the event, that if the train was stopped at a bad place, the engine could not start the train without throwing down, or being likely to throw down, passengers who were standing up; the jury were justified in finding that the defendant knew that passengers were standing in this train without objection on the part of its servants, who had charge of the train. The negligence consisted in making up the train so that the engineer had to take up the slack and go forward with a jerk to start it, if it happened to stop in such a place as it did stop in, coupled with the failure of the defendant, through its servants, who were in charge of the train, to warn passengers that the train would start back with a jerk radically different from that usually experienced when a train is put in motion.

*Exceptions overruled.*