DENNIS FOLEY *vs.* BOSTON AND MAINE RAILROAD.

Essex.    November 8, 1906. — January 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Evidence,* Judicial notice, Force of words. *Negligence. Railroad.*

It is a matter of common knowledge that from time to time the tracks of steam railroads must be repaired and bridges must be replaced, and that in the performance of this work it may be necessary to use crossovers from one main track to another.

It is a matter of common knowledge that in the proper operation of a passenger train on a steam railroad there may be jerks and lurches.

In considering the description of an accident by a witness little if any weight is to be given to expletive or declamatory words or phrases which appear to have been used in an exaggerated or distorted sense.

If a passenger in the smoking car of the train of a steam railroad, knowing but unmindful of the facts that the train is about to pass over a bridge that is undergoing repairs where there are double tracks and will have to pass by means of a crossover from one track to the other, that when the car strikes the switch there will be more or less of a jar, its force depending upon the speed of the train, and that the train is moving swiftly, and being unable to find a seat in the smoking car where five or six passengers are standing in the aisle, stands immediately inside the threshold of the doorway leading to the back platform of the car, with his back against the door, which is open, and his hands down at his sides, when there come a lurch and jar of the train which throw him against another passenger and then out on the platform and backward to the ground, where he is injured, he has not exercised due care and cannot recover from the railroad company for his injuries, even if the company was negligent.

TORT for injuries sustained while a passenger on a train of the defendant by being thrown from the platform of one of the cars of the train. Writ dated September 22, 1902.

In the Superior Court the case was tried before *Fox,* J. The accident occurred at about midnight of a day in summer near Beverly Bridge, so called, over which trains run from Salem to Beverly. The plaintiff testified that he was forty-seven years old, and boarded the train at Salem for Beverly at about 11.40 o'clock P. M.; that he went into the rear end of the smoking car, and walked by three or four seats to see if he could find a vacant seat, but did not see any; that five or six passengers were standing in the aisle; that he then came back toward the rear of the

car, intending to go into the car behind, but did not go there nor attempt to, the train then being in motion; that he stood from one to three inches inside the threshold of the car, the door being open, with his back against the door and his hands down at his sides.   Although there were double tracks between Salem and Beverly, by reason of repairs in progress on one track there was a crossover and switch, so that trains bound from Salem for Beverly were switched on to the other track before crossing the bridge.   The plaintiff knew that this crossover was there and that it had been there for several days, and had ridden over it at an earlier hour on the same evening.   He knew that the train was going swiftly, and knew that when a car going swiftly struck a switch there would be more or less jar, depending upon the swiftness of the car, but did not think about it.   A lurch or jar of the train came, and he was thrown with "the awful force of the car," and pushed forward against another man, and thrown out on the platform and over the steps out backward upon the ground.   There was a "terrible jar" or lurch.   The plaintiff, if he had wanted to, might have gone farther up in the car and stood with safety.

One Davis, a passenger, testified that he was standing in the forward part of the car next behind the smoker, inside and close to the door, but did not notice the plaintiff; that there was a crowd in the smoking car and many were standing, and there were no vacant seats; that he noticed a sudden and pretty severe lurch, which threw him into a man's lap; that he did not go down, but it was just a lurch, and he had to put his hands out to save himself; that he did not notice the speed of the train, whether fast or slow at the time of the lurch, and did not know whether there were seats in other cars at Salem or not.

One McGovern, a passenger, testified that he was standing in the car behind the smoker, and there were no vacant seats; that he supposed the train was going at the regular rate of speed, when suddenly there was an unexpected jar, which caused people in his car to go forward and back, and one fell over against his lap; that he saw the plaintiff go forward and then backward out of the door.

One Brady, also a passenger, called by the plaintiff, testified

that there was quite a violent jerk about half way between Salem and Beverly; that he was thrown to the right and forward.

One McMorrell testified that he was a passenger standing in the smoker inside the rear door, and did not see any vacant seats; that the train went at its regular rate of speed between Salem and Beverly, until in the vicinity of the bridge it "slackened up a mite," and in resuming its regular speed a jar came, and people in the car came backward on him, and he went backward on the plaintiff; that it was the starting that caused him to go backward; that the train remained stationary or partly so for a brief time, and when it started there was a jerk which threw him off his balance backward; that it was not the lurch of the train passing over the crossover which threw him off, but the start after starting up; that the jerk was of such a character that if nobody had been behind him, and he had had room, by simply putting his foot backward he would have recovered his balance.

Evidence was introduced by the defendant tending to show that the crossover was of ordinary construction and was properly adapted to the uses to which it was put; that the speed of the train was eight miles an hour; and that "there were vacant seats in some of the other cars" upon the train.

At the close of the evidence the defendant asked the judge to order a verdict for the defendant. The judge refused to do this, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1,350. The defendant alleged exceptions.

*D. E. Hall*, (*H. F. Hurlburt* with him,) for the defendant.

*W. A. Pew, Jr.*, (*D. W. Quill* with him,) for the plaintiff.

RUGG, J. It is at least difficult to see how, upon this testimony, there was any negligence on the part of the defendant. *Timms* v. *Old Colony Street Railway*, 183 Mass. 193. It is a matter of common knowledge that tracks of steam railroads must be repaired and bridges replaced from time to time, and that, in the performance of this work, it may be necessary to use crossovers from one main track to another. It is also common knowledge that in the performance of the duty resting upon steam railroads of rapid and prompt transportation, even in the exercise of the high degree of care required of them, there may be jolts and

lurches in the management of trains.  *Weinschenk* v. *New York,
New Haven, & Hartford Railroad,* 190 Mass. 250.  *Byron* v.
*Lynn & Boston Railroad,* 177 Mass. 303.   There is nothing to
show that the jar in question resulted from any negligent act on
the part of the defendant, either as to speed or construction of
car or track.   The speed was described as "swift," and the jar
or lurch as "quite violent," "terrible," "awful," "very severe,"
and "unexpected."   But mere expletive or declamatory words
or phrases as descriptive of speed or acts, unaccompanied by any
evidence capable of conveying to the ordinary mind some defi-
nite conception of a specific physical fact, and depending gener-
ally upon the degree of nervous emotion, exuberance of diction,
and volatility of imagination of the witness, and not upon his
capacity to reproduce by language a true picture of a past event,
are of slight, if indeed they are of any, assistance in determining
the real character of the fact, respecting which they are used.

Passing to the other branch of the plaintiff's case, there are
greater difficulties in his way.   He knew of the existence of the
crossover, and that it had been there for several days, and that
all trains going to Beverly from Salem were obliged to use it,
and that the going upon the crossover would cause more or less
jar to the train.   He also testified that if he had supported him-
self by his hands he would not have been thrown off his balance.
He took his position within, at farthest, three inches from the
open door of the car, although he might have stood farther in
the car in a place of perfect safety, and he failed to investigate
whether there were vacant seats in other cars of the train than
the one in which he was standing.   It is manifest that no injury
would have been sustained by him if he had been seated.   It has
been said that one who elects to stand in a steam train, when
there are vacant seats, cannot recover for an accident which he
would not have suffered except for his standing position.  *Far-
non* v. *Boston & Albany Railroad,* 180 Mass. 212.   To be either
upon the platform of a car or just within its threshold on the
way to and in search of a permanent place of safety within a car
is quite different from voluntarily taking one's stand for the
journey barely inside an open door, with the knowledge that by
reason of construction repairs, reasonably and necessarily prose-
cuted, so far as appears, the train must pass over a switch under

such circumstances as almost necessarily to cause some disturbance to the train. The plaintiff testified that he intended to go back into other cars of the train, but, without any disclosed reason for so doing, he stood in this position of danger while the train passed a distance of three quarters of a mile. Under the particular circumstances of this case, with the plaintiff's special knowledge of conditions, he cannot be said to have been in the exercise of such care as ordinary prudence requires.

*Exceptions sustained.*