JULIA JAMESON, executrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.    December 10, 1906. — January 3, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.    Street Railway.*

In an action at common law by an executrix against a street railway company for suffering of the plaintiff's testator alleged to have been caused by injuries received while a passenger on a car of the defendant, there was evidence that the plaintiff's testator was an old man and feeble on his legs, that two days before his death he boarded a car of the defendant which " started suddenly and threw him his length and he put his hand in a woman's bandbox up to his elbow," that the next day he went to his work and the day after, which was Sunday, went to church, and that when he went to bed on Sunday night he had a paralytic shock from which he died. There was medical testimony to show that the shock might have been caused by such an accident. No further explanation of the accident appeared. *Held,* that there was no evidence for the jury that the plaintiff's testator was in the exercise of due care or that the defendant was negligent, the manner in which the accident happened being left to conjecture.

LORING, J.    This is an action at common law for the suffering endured by the plaintiff's testator as a result of a fall in a car of the defendant.

The plaintiff testified that the testator was an old man; (it is stated in the plaintiff's brief that he was about sixty-seven;) that "he showed his age the last year or two, and . . . seemed to be more feeble"; that "he walked feebly, sort of shuffled along a little, not always, but at times"; that "his hair was very white, he had grown quite thin . . . his clothes were loose about him."

He had a factory in Chauncy Street, Boston, and lived in

Cambridge. On the night of Friday, November 21, 1902, as he sat down to dinner in his home, he told his wife " that he boarded a car and it started suddenly and threw him his length and he put his hand in a woman's bandbox up to his elbow." " He went to his work next day and to church Sunday, and when he went to go to bed Sunday night he had a shock." This was a paralytic shock from which he died.

In describing the accident the plaintiff stated that " he said that he had just gotten in, the car started, did not say whether or not he was inside the car, nor what part of the car he was in. . . . He told her that the jerk came from the starting up of the car." The witness " did not know where the bandbox was, nor whether he fell on the floor of the car or the seat, he did not tell her. He did not describe the bandbox nor complain of having injured himself or striking himself in any way, except putting his hand through the bandbox." The plaintiff also testified that she did not " know whether his clothes showed any marks of dirt or not that evening; she did not notice them " ; and that he " did not tell her whether or not he had hold of [a] strap nor tell her the number of the car, or conductor, or what sort of car it was, nor where it happened, only that it was when he was going down to the station."

An employee of the testator testified that on Saturday the testator told him that " after he got on his car at the corner of Summer and Washington, the car suddenly started and he lost his balance and fell his full length on the floor ; and that while falling he thrust his arm into some one's bandbox; that he felt sort of hurt, and offered an apology, asked the woman if there was any damage done. He told me that she accepted his apology and that there was no damages done so that therefore we didn't discuss it any more."

There was corroborative testimony of a servant girl as to his statement on Friday evening, and of a doctor and an acquaintance as to his personal appearance in general. There also was medical testimony to show that the shock might have been caused by such an accident.

On this evidence the presiding judge directed the jury to return a verdict for the defendant, and the case is here on an exception to that ruling.

We are of opinion that the ruling of the presiding judge was right.

The only evidence of the circumstances under which the plaintiff's testator fell consisted of the statements made by him before he died. These statements did not go far enough to show that he was in the exercise of due care, or that the defendant's servants were negligent. All that the plaintiff proved was that in some way her testator, who was feeble on his legs, fell on the defendant's car starting apparently in the usual way, with something of a jerk. Just how the accident happened was left by the evidence to conjecture, and conjecture is not proof. See in this connection *Thomas* v. *Boston Elevated Railway, ante,* 438, and cases cited ; *Crowell* v. *Moley,* 188 Mass. 116 ; *Botkin* v. *Miller,* 190 Mass. 411.

*Exceptions overruled.*

*H. C. Long,* for the plaintiff.

*H. Bancroft,* for the defendant, was not called upon.