MURTAGH McGANN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 26, 1908. — September 3, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence.    Street Railway.*

It is no evidence of negligence on the part of a street railway company toward a passenger who was being transported in one of its cars, that, when the car was between two hundred and fifty and three hundred feet from the stopping place where the passenger had signalled to have it stop and had begun to " slow down," it started ahead quickly " with a sudden jerk or jump," and that the passenger, who had gone to the platform to get off when the car reached the stopping place, was thrown off and injured.

The possibility of an electric car giving a jerk is an incident of travel which every traveller must expect. To make out a case of negligence on the part of the corporation operating the car it is necessary to show that the jerk was due to a defect in the track or to negligence in the operation of the car.

TORT against a street railway company for personal injuries incurred on October 24, 1903, while being transported as a passenger on a car of the defendant, by reason of alleged negligence in the operation of the car.   Writ dated December 18, 1903.

In the Superior Court the case was tried before *Pierce,* J., who refused to order a verdict for the defendant or to rule that there was no evidence of negligence on the part of the motorman or on the part of the conductor.   He submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $2,000.   The defendant alleged exceptions.

*R. G. Dodge,* (*S. H. E. Freund* with him,) for the defendant.

*J. H. Vahey,* (*P. Mansfield* with him,) for the plaintiff.

LORING, J.   This action is brought by a passenger to recover for injuries suffered by him when he was thrown or fell from a car of the defendant at about eight o'clock in the evening of October 24, 1903.

The car in question was a closed car operated by electricity. The plaintiff got on at Watertown Square, intending to get off at Cottage Street in East Watertown.

The car in question was running east on Mount Auburn Street.   The white post for the stopping place next before Cottage Street is at School Lane.   Cottage Street is six hundred and thirty feet further on than School Lane.   The plaintiff was thrown off at a point two hundred and forty-five feet west of Cottage Street, that is to say, as the car in question was going it had to go two hundred and forty-five feet beyond the place where the plaintiff was thrown off in order to arrive at Cottage Street.

The plaintiff's story was that at or about School Lane he signalled the conductor to stop at Cottage Street.   The conductor "bowed his head, and then the car after it went a good ways, slowed up, and I thought it was at Cottage Street, and I got up, and as soon as I got out on the platform it made a sudden jump and threw me right on my head and I didn't know anything more."   In another part of his testimony the plaintiff's description of what happened was that "the car gave a jerk."   It is admitted that the car did not come to a stop ; the plaintiff's testimony as to that was: "It was almost at a full stop."   The defendant's tracks from School Lane to Cottage Street are straight and the street was well lighted.

In addition to his own testimony the plaintiff introduced that of one Neal, who was walking on the right hand sidewalk of Mount Auburn Street, in the direction in which the car was going and just ahead of it. He also put on the stand one Burke, a policeman, who was standing opposite Cottage Street, on the other side of Mount Auburn Street.

Neal testified that the car was " coming apparently slowly, and I looked around. It started forward, and a body came out on to the street." On being asked to state what kind of movement the start was, he testified : " Well, it was a start, going from slowing down to a speed — to a — to quite a speed."

Burke testified : " I saw the car slow down, I saw it start ahead quickly." " It started with a sudden jerk or jump. It started as though — when I have ridden on cars — the motorman would let off the brake and it would start and go ahead."

The plaintiff, in going on to the platform to get off when the car reached Cottage Street, took the risk of all accidents not arising from negligence on the part of the defendant. *Stewart* v. *Boston & Providence Railroad,* 146 Mass. 605, 606. *Weinschenk* v. *New York, New Haven, & Hartford Railroad,* 190 Mass. 250, 251.

We are of opinion that the evidence of the plaintiff did not warrant a finding that the defendant was negligent. A plaintiff does not make out a case by proving that an electric car gave a jerk or similar motion and that he was hurt. *Byron* v. *Lynn & Boston Railroad,* 177 Mass. 303. *Timms* v. *Old Colony Street Railway,* 183 Mass. 193. *Jameson* v. *Boston Elevated Railway,* 193 Mass. 560. *Sanderson* v. *Boston Elevated Railway,* 194 Mass. 337. See also in this connection *Stewart* v. *Boston & Providence Railroad,* 146 Mass. 605; *Snowden* v. *Boston & Maine Railroad,* 151 Mass. 220, 222 ; *Holland* v. *West End Street Railway,* 155 Mass. 387, 388; *McCauley* v. *Springfield Street Railway,* 169 Mass. 301, 302; *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332, 334, 335.

The possibility of an electric car giving a jerk is an incident of travel which every passenger must expect. To make out a case of negligence on the part of a defendant railway company in such a case the plaintiff must go further and introduce evidence that the jerk in question was due to a defect in the track

or to negligence in the operation of the car. ' See *Byron* v. *Lynn & Boston Railroad*, 177 Mass. 303, 305 ; *Timms* v. *Old Colony Street Railway*, 183 Mass. 193, 194.   See also in this connection *Weinschenk* v. *New York, New Haven, & Hartford Railroad*, 190 Mass. 250, 252 ; *Foley* v. *Boston & Maine Railroad*. 193 Mass. 332, 335.

The description of the jerk given by the witnesses in the case at bar, so far as the character of it is concerned, is well within the previous cases in which it was held that the plaintiff had not made out a case.   *Byron* v. *Lynn & Boston Railroad*, 177 Mass. 303.   *McCauley* v. *Springfield Street Railway*, 169 Mass. 301. *Timms* v. *Old Colony Street Railway*, 183 Mass. 193.   *Jameson* v. *Boston Elevated Railway*, 193 Mass. 560.   For similar cases of steam railroads, see *Stewart* v. *Boston & Providence Railroad*, 146 Mass. 605 ; *Snowden* v. *Boston & Maine Railroad*, 151 Mass. 220 ; *Weinschenk* v. *New York, New Haven, & Hartford Railroad*, 190 Mass. 250 ; *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332.

To take the case out of those decisions the plaintiff's counsel rely on the fact that it appeared affirmatively in the case at bar that there was no occasion to slow up and start ahead.   If the defendant had rested on the plaintiff's evidence the case would have stood in this respect on all fours with the previous decisions of this court.   In those cases, as was said by Lathrop, J., of the case then before the court : " As to the apparent sudden stopping, there is nothing to show that it was not caused by some obstacle suddenly appearing in front, such as a horse and wagon or a person on foot, attempting to cross the track a short distance ahead."   *Timms* v. *Old Colony Street Railway*, 183 Mass. 193, 194.

It is not necessary to consider whether it was open to the defendant to argue that this may have been the fact in the case at bar although the case made out by it in evidence was that the speed of the car never changed.   For we are of opinion that, even if that was not open to the defendant here, it is not incumbent on the motorman of an electric car to maintain a uniform rate of speed, even if the car is somewhere between two hundred and fifty and three hundred feet of a stopping place at which he had been signalled to stop.

We have been referred by the plaintiff to a number of cases outside Massachusetts. The case of *Consolidated Traction Co.* v. *Thalheimer*, 30 Vroom, 474, is not in accord with the decisions in this Commonwealth. As we have said in this Commonwealth a plaintiff does not make out a *prima facie* case by introducing evidence that there was a jerk and that he was injured. It seems to be held in *Consolidated Traction Co.* v. *Thalheimer*, that from those two facts the jury can infer that the jerk was so harsh that it hurt the plaintiff and that in such a case the doctrine of *res ipsa loquitur* applies. The doctrine of our decisions is that the burden is on the plaintiff to introduce evidence to prove that the jerk in question was such a jerk that it would injure a passenger who is in the exercise of due care. The only question before the court in the subsequent case of *Scott* v. *Bergen County Traction Co.* 34 Vroom, 407 ; *S. C.* 35 Vroom, 362, was the contributory negligence of the plaintiff.

We find nothing in the other decisions of courts of final resort cited by the plaintiff in conflict with our cases.

*Exceptions sustained.*