CATHERINE HUNT *vs.* BOSTON ELEVATED RAILWAY COMPANY.

MICHAEL F. HUNT *vs.* SAME.

Suffolk. November 16, 17, 1908. — February 26, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence. Carrier*, Of passengers. *Elevated Railway.*

In an action against a corporation operating an elevated railway designed for rapid transit, for personal injuries caused by the sliding door at the end of a car on a train of the defendant shutting upon the fingers of the plaintiff when the car

gave a lurch in passing around a curve and the plaintiff had grasped the casing of the door for support, testimony of the plaintiff that the speed of the train while going around the curve was " terrible," " frightful," " greater than ever before," " awful," " very unusual," and " very fast," and that " it seemed the car would almost leave the track," is a mere accumulation of declamatory adjectives, and is not evidence of the defendant's negligence to be submitted to the jury.

It is a matter of common observation that there are lurches in the operation of a train upon an elevated railway, and the occurrence of such lurches is not evidence of negligence.

The fact, that a sliding door at the end of a car upon a train of an elevated railway closed upon the fingers of a passenger when the car gave a lurch in passing around a curve and the passenger had grasped the casing of the door for support, is not evidence of negligence on the part of the corporation operating the train, if there is nothing to show what caused the door of the car to be free from the catch or that its unfastening was due to the act of any person for whom the defendant was responsible.

Two ACTIONS OF TORT, against the Boston Elevated Railway Company, the first by a married woman for personal injuries from the sliding door at the end of a car of the defendant, on which she was being transported as a passenger, shutting upon her fingers when the car gave a lurch in passing around a curve of the elevated railway between the North Station and City Square in that part of Boston called Charlestown and she had grasped the casing of the door for support, and the second by the husband of the plaintiff in the first case for loss of her services by reason of such injuries and expenses of medical attendance and nursing.   Writs dated October 14, 1905.

In the Superior Court the cases were tried together before *White*, J.  At the close of the plaintiffs' evidence the judge ordered a verdict for the defendant in each case ; and the plaintiff in each case alleged exceptions, it being agreed by the parties that if the judge's ruling was right, judgment should be entered for the defendant in both cases, but that, if the judge's ruling on the question of liability was wrong, judgment should be entered for the plaintiff in the first case in the sum of $750 and costs, and for the plaintiff in the second case in the sum of $250 and costs.

*F. M. J. Sheenan,* ( *W. J. Kelly* with him,) for the plaintiffs.

*F. W. Knowlton,* for the defendant.

RUGG, J.   These are actions of tort, that of the female plaintiff being for injuries to her person, and that of the male plaintiff for the consequential damage suffered by him as her husband.

In this opinion the word "plaintiff" refers to Catherine Hunt, the plaintiff in the first case.

The plaintiff in company with another woman named McCarty took an elevated train at the Dudley Street terminal in Boston for City Square, Charlestown, on July 5, 1905. After the train passed the Park Street station in the subway Mrs. McCarty became sick, and at Haymarket Square went with the guard's permission to stand on the front platform of the car, and stood leaning over the iron gate of the car. The plaintiff, fearing that Mrs. McCarty would fall over, left her seat, went to her assistance and supported her. The plaintiff was accustomed to travelling upon the elevated trains nearly every day, and testified that the door leading upon the platform was open, as it frequently was on hot days, but there was no evidence as to when or by whom it was opened. After the train left the North Station the plaintiff described the speed of the train while going around the curve as "terrible," "frightful," "greater than ever before," "awful," "very unusual," "very fast," and "it seemed the car would almost leave the track," and that while the train was thus going around the curve she placed her hand on the casing of the door to save herself from being thrown, and while in that position the door came out of the socket and struck against her hand. The door of the car was opened and closed by hand. It had an overhead brass run, and ran on a wheel, and there was some arrangement at the bottom of the door. When the door was to be opened it was thrown back, slid along in a casing, and was caught by a spring concealed in the woodwork of the car, and was held so that ordinarily it would not release itself, but all that was needed to release it from the catch was a little pull. It was supposed "to catch so that it could not lightly be thrown to — merely to hold it back like any door catch." There was also some evidence tending to show that the door swayed back and forth a little for a substantial time before the plaintiff was injured. It is strongly argued that, owing to her familiarity with the route, to the several opportunities which existed for Mrs. McCarty and the plaintiff to leave the car after the former became sick and before the accident, and to the fact that she voluntarily took her place in such an exposed position as the end of an elevated car, to-

gether with her knowledge of the oscillation of the door before the injury, the plaintiff is precluded from recovery.

Without determining this question, we pass to the discussion of the plaintiff's contention that the defendant was negligent by reason of the excessive speed at which the car was driven, and by reason of the closing of the car door against the fingers of the plaintiff. The Boston Elevated Railway was established and its trains are operated for the purpose of rapid transit. The place provided for passengers during their passage is inside the car. There is nothing in the evidence to show that the speed at which this car was run was excessive. The evidence upon this point is a mere accumulation of declamatory adjectives. The record is bare of any testimony showing that in the place provided for passengers anything occurred out of the ordinary. It is a matter of common observation that there are lurches in the operation of trains upon the elevated structure, and there is every probability that these are necessary in the present state of the science even in connection with the operation of the trains under the high degree of responsibility which attaches to the defendant as a common carrier. In this respect the case is well within the cases of *McCann* v. *Boston Elevated Railway,* 199 Mass. 446, *Stevens* v. *Boston Elevated Railway,* 199 Mass. 471, *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332, and *Weinschenk* v. *New York, New Haven, & Hartford Railroad,* 190 Mass. 250.

There is no evidence to show what caused the door of the car to be free from the catch. That may have been as attributable to the act of a fellow passenger in opening the door for ventilation, entrance or exit, as to the act of any person for whom the defendant was responsible. *Faulkner* v. *Boston & Maine Railroad,* 187 Mass. 254.

Taking all the evidence together, in the light most adverse to the defendant, it does not appear that there was any circumstance within the knowledge of the defendant or its agents reasonably calculated to excite apprehension that an injury would be occasioned to any passenger, or that it failed in any duty owed to them.

*Exceptions overruled.*