## BOSTON ELEVATED RY. CO. v. SMITH.

(Circuit Court of Appeals, First Circuit. March 16, 1909.)

No. 807.

1. CARRIERS (§ 298*)—CARRIAGE OF PASSENGERS—INJURIES—STARTING WITH JERK.

The possibility that an electric street car will start with more or less of a jerk is an incident of travel in such conveyance which every passenger must expect and of which he assumes the risk; and the mere fact that a car started with a jerk and that a passenger fell and was hurt does not make out a case of negligence in starting the car, but the proof must go further and show that the start was unusually sudden or violent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1205; Dec. Dig. § 298.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CARRIERS (§ 298*)—ELECTRIC STREET RAILROADS—CARRIAGE OF PASSENGERS—INJURIES—STARTING WITH JERK.

Plaintiff, who was a robust woman weighing nearly 200 pounds, entered an electric street car at a regular stopping place, carrying in one hand an umbrella and a small hand bag. When she was fully upon the floor of the vestibule the conductor gave the starting signal, and as plaintiff was about stepping into the body of the car it started, and she fell and was injured. *Held*, that there was nothing in her appearance to require the conductor to exercise special or unusual care, and that, under the settled rule in Massachusetts that under ordinary circumstances it is not negligence for a conductor to give a starting signal after a passenger is fully and fairly upon the car, the conductor in such case was not chargeable with negligence which rendered the street railroad company liable for plaintiff's injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1205; Dec. Dig. § 298.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

M. F. Dickinson and Walter Bates Farr, for plaintiff in error.

Julian C. Woodman, for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

COLT, Circuit Judge. This is an action of tort to recover damages for personal injuries. The plaintiff was a passenger on an electric street car operated by the defendant. She had just boarded the car, when, upon the sudden movement of the car in starting, she fell upon the floor, inflicting the injuries complained of. The jury returned a verdict for the plaintiff.

At the close of the evidence the defendant requested the court to rule as follows:

"(1) Upon all the evidence in the case the plaintiff is not entitled to recover.

"(2) There is no evidence in this case sufficient to warrant the jury in finding that the plaintiff's injuries were due to the negligence or carelessness of the motorman in the way and manner in which he started the car.

"(3) Nor is there sufficient evidence to warrant the jury in finding that the conductor was negligent or careless in giving the signal to start the car when he did, under all the circumstances in this case."

These rulings the court declined to make, and the defendant duly excepted. There were also other requests for rulings which we find it unnecessary to consider.

The material facts are as follows:

On November 15, 1906, about 8 o'clock in the evening, when returning home from her work, the plaintiff boarded one of the defendant's inward-bound cars at the corner of P and third streets, South Boston. She was carrying in her hand at the time an umbrella and a small hand bag. The night was stormy. The car had just left the carhouse, and the only other persons on the car except the motorman and conductor of the car were three conductors employed by the defendant, who were returning home after their day's work. The car was a vestibuled closed car, and the threshold of the door leading into the car was 6½ inches above the floor of the platform, and on this threshold were two small projections on which the door runs.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff was a German woman, 52 years of age, 5 feet 5 inches in height, and weighed about 198 pounds. She was a stout woman in appearance, and she was slow in her movements. She was accustomed to riding on electric cars. According to her story, she had mounted the platform, and was about to enter the car door, with her umbrella and bag in one hand, and holding her dress in the other, when the car was started with a sudden jerk, which threw her to the floor, injuring her leg, abdomen, and arm.

In her testimony the plaintiff says:

"I got onto the platform, and as I was trying to get inside the car, holding up my dress, the car started with a sudden jerk, unusually quick. I was slightly thrown back and forward before I had a chance to put my foot on the threshold of the door. I came down on my shin on the threshold with my knee. I fell on my shin, and with my left leg I went down on my knee, and I tried to reach forward to catch the door or something to hold myself, but I couldn't. I was thrown forward, and my arm came under me. One of the employés assisted me up. I had my bag and umbrella, which flew halfway in the car.

"I was seated on the corner seat on the right-hand side after the accident. One of the carmen came and asked my name and asked me if I was badly hurt and I said, 'Yes.' I could scarcely speak, but I managed to get home, but it was very hard, and I tried to go to work the next morning, but I was unable to work. I went home and sent for the doctor. I stayed home between five and six weeks, and I have not fully recovered to-day. I was out of work between five and six weeks. I was obliged to go to work in order to support myself and my aged sister. There was no trouble about finding a seat in the car. There were five carmen inside the car. They sat one near each door and two on each side up above. I had an umbrella and bag in one hand, and lifted up my skirt in order to avoid stepping on it. It was raining; it was snowing; it was a very stormy night. The car windows were covered with snow. I was thrown back a little first and then forward. When I fell I hit both my shins, both my knees, and landed very heavily on the lower part of my stomach and my arm. The car was on a straight track. My experience is that if a car is on a straight track and starts with a sudden jerk it will throw a person backward.

"Q. You did step on your skirt when you were entering? A. I did not step on it.

"Q. You say that you had got on the platform of the car and were going inside and putting your foot on the step of the floor of the car, and that is the time the car started? A. Yes.

"Q. Which foot did you put upon the floor? A. Right foot.

"Q. You say that you were thrown back a little? A. Thrown back a little, and then forward.

"Q. How was it you were thrown forward if you didn't step on your dress? A. The sudden jerk of the car.

"Q. Sudden jerk of the car forward you mean? A. The car started suddenly.

"Q. With a jerk. A. With a jerk, before I had a chance to get inside."

In addition to her own evidence, the plaintiff called as witnesses two physicians who testified as to her injuries. Dr. Hayes, her attending physician, said that he called on the plaintiff on November 15, 1906; that he found, among other injuries, transverse abrasions of the right shin, about junction of the middle and lower third, with indentation of bone at that site; just above these were two smaller abrasions, similar, but not so pronounced; that the indentation was still to be found at the time of the trial. The plaintiff also called, as a witness, John W. Sullivan, an expert in the operation of electric cars, who testified as

to the manner of starting cars gradually and slowly, or with a jerk. This comprises the entire evidence of the plaintiff.

The defendant called as witnesses the conductor and motorman of the car, and the three other conductors who were aboard at the time. All these witnesses testified that the car started in the ordinary way, or with no unusual jerk; and they all, except the motorman, further testified that the plaintiff was inside the car door about two feet, when the car started, and she fell upon the floor, and that she seemed to fall by reason of tripping on her skirt.

Upon the foregoing facts the question of the defendant's negligence involves two inquiries:

(1) Was there any evidence sufficient to warrant the jury in finding that the motorman started the car with an unusually sudden jerk?

(2) Was there any evidence sufficient to warrant the jury in finding that the conductor was guilty of negligence in giving the starting signal too soon?

1. While the evidence shows that the plaintiff's fall and consequent injuries were caused by the movement of the car in starting, there is no substantial evidence that the car was started with any unusual jerk. The statement of the plaintiff in her declaration that she "was violently thrown down  *  *  *  in starting the car" is not supported by the proofs. While she testifies that the car was "started with a sudden jerk, unusually quick," this is immediately qualified by the statement that she "was slightly thrown back and forward"; and this statement is repeated with a slight change in form: "I was thrown back a little first and then forward"; and in her cross-examination, although she says "the car started suddenly," this is again qualified by the statement that she "was thrown back a little and then forward." This evidence is consistent with the ordinary jerk of the car in starting, and is inconsistent with any sudden or violent jerk. Again, according to her own story, her position was such, as she was about stepping from the platform upon the threshold of the car, with her umbrella and bag in one hand and holding her dress in the other, that any ordinary jerk of the car in starting would be likely to throw her down, unless she braced herself in some way against the side of the door.

There is also the evidence that her "bag and umbrella flew halfway in the car," and that there was an indentation in the shin bone caused by her fall. While this evidence has a bearing on the degree of suddenness with which the car started, we do not think it is sufficient to make out a case of negligence, in the absence of other clear evidence that the start was unusually sudden or violent. The bag and umbrella would naturally be thrown from her hand in trying to save herself from falling, while the indentation might be caused by the simple fall of a heavy woman in striking her shin against the projections on the threshold of the car door.

It is well understood by persons accustomed to ride on electric cars that the cars are liable to start with more or less of a sudden movement or jerk. Since this is one of the known and common incidents of traveling by this mode of conveyance, the ordinary passenger may be said to assume this risk. He expects that the car may start with a greater

or less degree of jerk, and he realizes that he must exercise due care to protect himself against such a movement. The mere fact, therefore, that the car started with a sudden movement or jerk, and that the plaintiff was hurt, does not make out a case of negligence in the manner of starting the car, but the proof must go further and show that the start was unusually sudden or violent.

In McGann v. Boston Elevated Railway Company, 199 Mass. 446, 85 N. E. 570, the plaintiff was thrown from the defendant's car and injured, and the court below refused to direct a verdict for the defendant, or to rule that there was no evidence of negligence on the part of the motorman or on the part of the conductor; and the exceptions to these rulings were sustained by the Supreme Court. There was evidence in that case that the car "made a sudden jump," that the car "gave a jerk," and that the car "started with a sudden jerk or jump." The court in its opinion, which was drawn by Mr. Justice Loring, said:

"A plaintiff does not make out a case by proving that an electric car made a jerk or similar motion, and that he was hurt. * * * The possibility of an electric car giving a jerk is an incident of travel which every passenger must expect. To make out a case of negligence on the part of a defendant railway company in such a case, the plaintiff must go further and introduce evidence that the jerk in question was due to a defect in the track or to negligence in the operation of the car."

In the earlier and leading case of Byron v. Lynn & Boston Railroad Company, 177 Mass. 303, 305, 58 N. E. 1015, the plaintiff's intestate was on the rear platform of the car when the car, on passing over a switch, gave a sudden swing or jerk, which threw him from the car. In the opinion, Mr. Justice Barker, speaking for the court, said:

"Upon full consideration of the evidence, we are of the opinion that it would not justify a finding that the defendant was negligent. * * * The plaintiff's intestate was thrown to the ground by a swaying, or jolt, or lurch of the car, as it returned to the main track from a siding. Such motions of street cars are of common and frequent occurrence, and are to be expected to a greater or less degree whenever the car passes from one track to another, and so are of the class of usual and unavoidable incidents in the use of cars upon the streets. * * * Unless they are unusual in degree and caused by some defect in the car or the track or by some unusual or dangerous rate of speed, they furnish no evidence of negligence on the part of the carrier or of its servants. * * * There was no evidence that the jolt was due to any defect in the car or in the track, or that the car was proceeding at an extraordinary speed. * * * The jar felt by the different witnesses was not so great as to be unusual, or as to justify a finding that it was due to negligence of the defendant or of its servants."

In Jameson v. Boston Elevated Railway Company, 193 Mass. 560, 562, 79 N. E. 750, 751, there was testimony that the plaintiff's intestate had boarded the car, and that "it started suddenly and threw him his length, and he put his hand in a woman's bandbox up to his elbow." In the opinion in that case, the court said:

"These statements did not go far enough to show that he was in the exercise of due care, or that the defendant's servants were negligent. All that the plaintiff proved was that in some way her testator, who was feeble on his legs, fell on the defendant's car starting apparently in the usual way, with something of a jerk."

In Timms v. Old Colony Street Railway Company, 183 Mass. 193, 66 N. E. 797, where the plaintiff was standing near the edge of the

platform, and was thrown off the car and injured, the court uses the following language:

"There is nothing in the evidence to show that there was any defect in the car or in the condition of the rails, and jerks in the motion of street cars are not unusual."

In Sanderson v. Boston Elevated Railway Company, 194 Mass. 337, 341, 80 N. E. 515, 517, the plaintiff was thrown off the car and injured, and there was evidence that the car made a "plunge," a "kind of a lurch," a "jar ahead to a considerable extent," a "movement such as you feel when the power is applied." In the opinion, Mr. Justice Hammond, speaking for the court, said:

"Even if the plaintiffs' theory of the accident be adopted, the evidence discloses no negligence of the defendant. There does not appear to have been any evidence of defect in the car or tracks, or of incompetency of the defendant's servants. * * * There may be movements of a car so severe that a mere description of them and their results may justify the inference that they were attributable to some negligence on the part of the carrier, but the movement described in this case is not of that character. It was not due to any defect, and the possibility of such a movement is a thing which every one who gets upon a street car must be taken to contemplate."

Under these decisions the plaintiff's evidence in the case at bar is clearly insufficient to warrant the finding that the motorman was negligent in the way in which he started the car.

2. The remaining question is whether there was any evidence sufficient to justify a finding that the conductor was negligent in giving the starting signal too soon.

It is settled law in Massachusetts that under ordinary circumstances it is not negligence for a conductor to give the starting signal after the passenger is fully and fairly upon the car. Sauvan v. Citizens' Electric Street Railway Company, 197 Mass. 176, 177, 83 N. E. 405. The practical reasons underlying this rule are obvious. The public demands as rapid transportation on street cars as conditions will permit. To this end it is necessary that there should be as little delay as possible in the frequent stopping of the cars to take on passengers. If, therefore, it were the duty of the conductor to wait until each passenger is seated before giving the starting signal, it would result in much delay, and consequently the running time would be much slower; and hence it has become the common practice, under ordinary circumstances, for the conductor to ring the starting bell as soon as the passenger is fully on the car; and it may be said that the ordinary passenger anticipates this as one of the usual incidents in the operation of street cars, and is accordingly on the lookout to protect himself from any serious consequences resulting therefrom.

In the case at bar the plaintiff was fully upon the car when the conductor gave the starting signal. She says:

"I got onto the platform, and as I was trying to get inside the car, holding up my dress, the car started * * * before I had a chance to put my foot on the threshold of the door."

The conductor must have given the signal to start a moment before this, and therefore the plaintiff had fully boarded the vestibule of the car at the time the signal was given. Nor does it appear that

there were any extraordinary or exceptional circumstances in this case, such as might be held to take it out of the general rule laid down in Sauvan v. Citizens' Electric Railway Company. The plaintiff was a woman of mature years and apparently in good health, and she had had experience in riding upon electric cars. That she was a stout woman, slow in her movements, and carrying a small bag and an umbrella in one hand, does not, in our opinion, take her out of the class of ordinary persons who travel on electric cars. In other words, there was nothing in her appearance of such an unusual or exceptional character as to make it the duty of the conductor to exercise special care in her case by waiting until she was seated in the car before giving the starting signal.

The facts in the Sauvan Case very closely resemble those in the case at bar. In that case the plaintiff was "a large· robust woman, weighing about 170 pounds," who "looked and was in perfect health." She got upon the car at a regular stopping place when the car was standing still. She was proceeding to her seat when the car started, causing her to fall against the woodwork inside the car. According to her evidence, she had stepped up over the steps into the vestibule, and was fully and fairly on the floor of the vestibule of the car before the conductor rang the starting bell. Her complaint was that the starting bell was rung when she had put one foot on the floor of the car, had thrown her weight onto that foot, and was in the act of bringing the other foot up and forward; and she contended that on this evidence the jury could have found that the conductor, in giving the signal to start the car when he did, did not use the care which is owed by a common carrier to one of its passengers.

In the opinion of the court, Mr. Justice Loring said:

"If the starting signal was given when the plaintiff contends that it was given, it seems hardly possible that the car could have started before the second foot had reached the car floor, or, at any rate, it might well be contended that the conductor could not have anticipated such an instantaneous response to his signal. But apart from that, it is settled in this commonwealth that under ordinary circumstances it is not negligence for a conductor to give the starting signal after the passenger is fully and fairly on the car."

We think the case at bar comes clearly within the Massachusetts rule laid down in the Sauvan Case; and it follows that, the plaintiff being fully and fairly upon the car, the conductor was not guilty of negligence in giving the starting signal.

The judgment of the Circuit Court is reversed, the verdict set aside, and the case remanded to that court with directions to order a new trial, and the plaintiff in error recovers costs in this court.