### GEORGE F. GRACE *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. November 4, 1947. — January 5, 1948.

Present: QUA, C.J., DOLAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence*, Escalator. *Words*, "Slippery."

Evidence, merely that wooden cleats forming treads on an escalator at a railway station and a metal comb on a platform into which they passed on reaching the upper level were "worn, shiny, slippery and smooth," did not warrant a finding of negligence on the part of the railway company toward a passenger who slipped on the comb and cleats at the top of the incline.

TORT. Writ in the Superior Court dated October 15, 1942.

The action was tried before *Collins*, J.

*R. S. McCabe*, for the plaintiff.

*R. L. Mapplebeck*, for the defendant.

WILLIAMS, J.   This is an action of tort for personal injuries incurred on May 11, 1942, by falling on the escalator maintained by the defendant at the Broadway tunnel station in South Boston.   The plaintiff has excepted to the order of the judge under leave reserved that a verdict be entered for the defendant, after the jury had returned a verdict for the plaintiff.   The case is here on a report.

The plaintiff under direct examination testified as follows. He got off the train at the Broadway tunnel station and waited until everybody had gone up the escalator.   He stood on the escalator until he got about a step or so from the top.   He took a step and slipped.   His body swung around and his hand went into a hole.   He was sitting facing the lower platform.   He could not get his hand out of the hole until two fellows assisted him.   He slipped "where the treads go into plates, metal plates."   After he fell he noticed the condition of the metal plates where he fell; "they looked smooth, shiny and they were worn and slippery, very slippery; and they were shiny; . . . all of the wooden treads of the escalator were smooth, shiny and they were worn and slippery."   The conditions that he observed in reference to the metal and the cleats the night of the accident were the same as had existed for a couple of years previous.   He "was about the second step from the top when he started to step and slipped; . . . he slipped where the cleats go into the iron teeth and also on the iron plate; . . . he did not slip on the platform outside the escalator."   He slipped both on the plate that is at the top of the escalator and beyond the wooden cleats, and on the cleats where they go through the iron teeth.   He was caused to fall by the "worn, shiny, slippery and smooth" condition of the escalator.   He remembered that "as he stepped, when the foot he moved forward came down, it slipped partly on the iron part the wooden cleats go into and partly on a plate, metal plate that was right next to it."

The escalator in question was installed by the Otis Elevator Company about 1917 and, as a part of the equip-

ment of the Broadway tunnel station, was leased to the defendant by the city of Boston. In effect, it is a travelling chain on which are affixed treads composed of longitudinal wooden cleats on which the passengers stand as they are conveyed from the lower to the upper level. As the treads reach the top of the escalator, they go through the curved teeth of a metal comb under the platform. The passenger who may be riding on a tread either steps off the tread to the metal plate when he reaches the top or else remains stationary and is conveyed by the forward impulse of the machine over the metal teeth of the comb to the horizontal platform beyond.

The jury could find that the plaintiff, who was a passenger of the defendant, was in the exercise of due care. Whether there was evidence of the defendant's negligence is the question to be decided. The tunnel station and the escalator were in the control of the defendant. Accidents on similar escalators maintained by it have been considered in *Cook* v. *Boston Elevated Railway,* 256 Mass. 27, where the hand rail which accompanied the series of treads in their upward journey had become worn; in *DuBois* v. *Boston Elevated Railway,* 276 Mass. 98, where a tooth at the side of the comb had become worn and roughened or "pock marked"; and in *Theall* v. *Boston Elevated Railway,* 213 Mass. 327. In the present case the plaintiff complains of the slippery condition of the cleats and comb. In his brief he directs our attention to the danger attending the combination of three planes confronting the passenger on reaching the top of the escalator: the plane of the top of the comb plate which is horizontal, the plane of the comb teeth which inclines down to meet the cleats of the treads as they come up, and the plane of the treads which inclines up. The carrier, the defendant, has an obvious duty to provide secure footing for its passengers at this point. The problem here is whether the evidence for the plaintiff shows a breach of this duty. In reference to the issue of a defendant's negligence, the probative value of testimony which describes a step or floor as smooth, shiny, worn and slippery has frequently been considered. See *Corcoran* v.

*United Markets, Inc.* 314 Mass. 26; *Shinkwin* v. *H. L. Green Co. Inc.* 318 Mass. 70, and cases therein cited. In *Risk* v. *Boston,* 317 Mass. 534, 537, it was said the "characterization of the curbing as 'smooth' and 'slippery' adds little or nothing." In *Rosenthal* v. *Central Garage of Lynn, Inc.* 279 Mass. 574, where the metal treads of a stairway were worn "shiny and smooth," the court said at page 575, "no such condition appeared as to warrant the conclusion that the stairway was unsafe merely as the result of wear." Where it has been held that the description of certain conditions furnishes evidence of negligence for the jury, testimony of definite physical wear ordinarily if not invariably has supplemented the employment of characterizing adjectives. A somewhat analogous question arises in the analysis of testimony concerning unusual jolts and jerks in common carrier cases. *McGann* v. *Boston Elevated Railway,* 199 Mass. 446. *Anderson* v. *Boston Elevated Railway,* 220 Mass. 28. In *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332, 335, Rugg, J., said, "mere . . . declamatory words or phrases as descriptive of speed or acts, unaccompanied by any evidence capable of conveying to the ordinary mind some definite conception of a specific physical fact, and depending generally upon the . . . imagination of the witness, and not upon his capacity to reproduce by language a true picture of a past event, are of slight, if indeed they are of any, assistance in determining the real character of the fact, respecting which they are used." Here to be sure, so far as the comb itself is concerned, we are dealing with an inclined plane which in different circumstances has been deemed a material fact. *Blease* v. *Webber,* 232 Mass. 165, *Shrigley* v. *Boston Symphony Orchestra, Inc.* 287 Mass. 300, and *Waldo* v. *A. H. Phillips, Inc.* 299 Mass. 349. But the method of construction of this leased escalator cannot be weighed as evidence of negligence on the part of the defendant lessee. *Theall* v. *Boston Elevated Railway,* 213 Mass. 327. Considering their use, the term "slippery," as applied to the wooden cleats, conveys no idea of a dangerous condition. As to the smoothness of the curved teeth of the comb, it is apparent that

such condition must be maintained if the passengers are to ride in safety from the wooden cleats over the plate to the horizontal platform. Any roughness in the metallic surface might well result in an occurrence such as was described in *DuBois* v. *Boston Elevated Railway*, 276 Mass. 98. We find no evidence here from which a jury could find negligence on the part of the defendant. *Peterson* v. *Empire Clothing Co.* 293 Mass. 447.

· *Judgment for the defendant.*